M. D. BROWN ET AL., RESPONDENTS, v. WABASH RAILWAY COMPANY, APPELLANT.*

Kansas City Court of Appeals. March 1, 1926.

*Corpus Juris-Cyc. References: Evidence, 22CJ, section 443, p. 379, n. 34; Judgments, 34CJ, section 1392, p. 975, n. 46; section 1401, p. 981, n. 7; section 1403, p. 982, n. 19; section 1465, p. 1033, n. 47.

*Ruby M. Hulen* for respondent.

*McBaine & Clark, Paul M. Peterson* and *Homer Hall* for appellant.

BLAND, J.—This is a suit to recover damages suffered by plaintiffs as a result of alleged negligence of the carrier in the shipment of a car of horses and mules from Browns Station in Boone county, Missouri, to Canton, Mississippi. There was a verdict and judgment in favor of plaintiff in the sum of $1000. Defendant appealed the cause to the Supreme Court thinking that there was a constitutional question involved but that court decided to the contrary and transferred the case here. [See Brown v. Wabash Ry. Co., 274 S. W. 388.]

The facts show that the shipment consisted of twenty-seven horses, five mules and one stallion. These animals were delivered to the defendant in good condition at Browns Station on the 8th day of April, 1920, and defendant undertook to transport them to Canton, Miss. When the stock arrived at Centralia, a short distance from Browns Station, the agent there notified the plaintiff Brown of an embargo

against the shipping of stock on account of a threatened strike. The agent wanted to return the stock to Browns Station but Brown refused to permit this, so defendant arranged with W. L. Green & Sons, owners of a live stock barn at Centralia, to take care of the stock. In attempting to transfer the animals from defendant's stock pens to this barn, they were permitted to escape and were not corralled until two or three days later. At the time of the escape of the animals, the weather was cold and chilly, snow was on the ground and the roads muddy; some of the animals reached a point as far as seven miles from Centralia and were driven back by the use of an automobile by an employee of Green & Sons. As a result of their running, the horses were very hot and had lather on them, some were lame and stiff and had lacerations on them where they had run into barb wire fencing. Seven or eight days after the animals were delivered to the defendant, Brown went to Centralia and visited the barn of Green & Sons and found a number of the horses and mules had dry foam on them. The foam marks on the stallion showed the outline of a saddle, indicating that it had been ridden. The animals were hungry and there was no water. The feed that was given them was not fit to be fed to live stock. ·

The evidence does not disclose the length of time the shipment was held in Centralia. However, the animals were reloaded at Centralia for shipment to Canton. At the time they were reloaded, one of the mules had died. When the shipment arrived at Canton it was two mules short, but as to how this loss occurred the record is silent. All of the animals were in bad condition when they arrived at Canton. One of the mules was in such a condition that it could not be taken from the car, and died. A number of the animals died at that place.

Plaintiffs instituted a replevin suit in Canton, Mississippi, against the Illinois Central Railroad Company, the connecting carrier, to obtain possession of the animals which were being held by that company for the freight bill. In that suit plaintiffs sought to recover damages in the sum of $1170 for injuries to the stock and to set off these damages to the extent of $642.46, the amount of the freight bill, against the bill. The suit was tried before a jury resulting in a verdict and judgment for the defendant. The answer in the case at bar pleads this judgment as *res adjudicata* as to the damages sought to be recovered on account of the negligence of the Illinois Central Railway.

The petition charges negligence in permitting the animals to escape at Centralia, in allowing one of the animals to be ridden and in the use of an automobile for their recapture, thereby frightening the animals and resulting in making them lame and "stove up" and in the impairment of their health. The failure to provide sufficient and wholesome food and water and that defendant, through its agents, "was so careless and negligent in the handling of said shipment and care of same while *in transit* from said station of Browns to Canton,

Mississippi'' etc., that the animals were injured and killed. The allegation of negligence in regard to handling of the shipment from Browns Station to Canton was general. There is some controversy between the parties as to whether plaintiffs are not confined to the specific allegations in reference to the handling of the animals at Centralia. Plaintiffs insist that in addition to the specific negligence aforesaid, the allegations of the petition are sufficient to let in evidence of damages sustained by the animals between Centralia and Canton. Without passing upon the matter, we will accept plaintiff's contention for the purpose of disposing of the case. Unquestionably, the answer proceeded upon the theory that the petition was sufficient in the respects claimed by plaintiffs.

Defendant insists that the court erred in sustaining plaintiff's objection to the introduction in evidence of the transcript of the record of the suit brought by plaintiffs against the Illinois Central at Canton, Mississippi, and refusing to give its instruction No. 9 withdrawing from the jury any damages that were caused by the Illinois Central Railway. It is contended that the judgment in that case is *res adjudicata* as to any claim for damages sustained on account of the negligence of that company. In discussing this point it is pertinent to examine into the relationship between defendant and the Illinois Central Railway Company in reference to the shipment. By the Federal statute the initial carrier is made liable for any loss, damage or injury to the shipment caused by the connecting carrier but the connecting carrier is made responsible over to the initial carrier for any loss or damage that it is required to pay to the owner of the property caused by the connecting carrier. [34 U. S. Stat. at Large, p. 595, chap. 3591, sec. 7; 41 U. S. Stat. at Large, p. 494, chap. 91, sec. 436.] The Federal statute makes all connecting carriers, employed in the transportation of the shipment, agents of the initial carrier for whose fault the latter is responsible to the owner of the goods. [Keithley et al. v. Lusk et al., 190 Mo. App. 458, 466, and cases therein cited.] As to the negligence of the connecting carrier, the two are joint tort-feasors.

Plaintiffs elected to sue the connecting carrier for damages caused by it, which they had a perfect right to do. Plaintiffs insist that there was no privity between the two railroad companies and therefore the former judgment is not a bar to that part of the present cause of action seeking to recover damages done by the connecting carrier, the Illinois Central Railway Company. There may not have been privity between the two carriers within the strict technical meaning of that term, and while the general rule is that a judgment is conclusive only as between the parties to an action and their privies, there are exceptions to the rule. In Taylor v. Sartorius, 130 Mo. App. 23, 40, the court said:

"The question of who is concluded by a judgment has been obscured by the use of the words 'privity' and 'privies,' which in their precise technical meaning in law, are scarcely determinative always of who is and who is not bound by a judgment. Courts have striven sometimes to give effect to the general doctrine that a judgment is only binding between parties and privies, by extending the signification of the word 'privies' to include relationships not originally embraced in it; whereas the true reason for holding the issue *res judicata,* does not necessarily depend on privity, but on the policy of law to end litigation by preventing a party who has had one fair trial of a question of fact, from again drawing it into controversy." [See, also, Hill v. Bain, 23 Atl. 44 (R. I.) ; Atkinson v. White, 60 Me. 396-398; Portland Gold Mining Co. v. Stratton's Independence, 158 Fed. 63, 66.] .

· We have examined the case of Womach v. St. Joseph, 201 Mo. 467, and like cases cited by plaintiffs, and find the facts in those cases so different from those in the case at bar as to render those cases not in point. The case of Taylor v. Sartorius, supra, deals with the Womach case and points out that the holding in the latter case has no application to cases like the one at bar. In the instant case we have involved between the two carriers the relationship of principal and agent and that of joint tort-feasors with the right of recovery over in favor of the initial carrier. Ordinarily, a judgment in favor of one of two joint tort-feasors is not *res adjudicata* in a suit by the same plaintiff against the other joint tort-feasor. But this rule has no application here. To permit this judgment, which includes damages to the shipment caused by the connecting carrier, to stand against defendant, might prevent the former from obtaining the benefits of the Mississippi judgment in its favor, in·that defendant might recover contribution from the Illinois Central Railway, and thus nullify the verdict and judgment in the latter's favor in plaintiffs' suit against it. Plaintiffs ought now to be estopped from recovering from defendant that which the Mississippi court determined it was not entitled to recover from the Illinois Central Railway. [Taylor v. Sartorius, supra; Spencer v. Dearth, 43 Vt. 96, 98.] The Illinois Central Railway would not be able to set up the judgment in its favor in the suit by plaintiffs as a bar to the right of the Wabash Railway to recover against it, if the Wabash Railway had no notice of the former suit and no opportunity to defend it. It is quite apparent that insofar as the damage done on the line of the Illinois Central Railway is concerned, the question involved in the two suits is precisely the same, the plaintiffs, of course, are the same. They have had a full hearing upon the law and facts involved and the very question that they now propose to try again in another suit, and we think they ought to be barred under the maxim of interest *reipublicae ut sit finis litium.*

"Thus it is settled by repeated decisions that the general rule that one may not have the benefit of a judgment as an estoppel unless he would have been bound by it had it been the other way is subject to recognized exceptions, one of which is that in actions of tort, such as trespass, if the defendant's responsibility is necessarily dependent upon the culpability of another, who was the immediate actor, and who, in an action against him by the same plaintiff for the same act, has been adjudged not culpable, the defendant may have the benefit of that judgment as an estoppel, even though he would not have been bound by it had it been the other way. And we think it could not well be otherwise, for, when the plaintiff has litigated directly with the immediate actor the claim that he was culpable, and, upon the full opportunity thus afforded for its legal investigation, the claim has been adjudged against the plaintiff, there is manifest propriety, and no injustice, in holding that he is thereby concluded from making it the basis of a right of recovery from another who is not otherwise responsible." [Portland Gold Mining Co. v. Stratton's Independence, supra, l. c. 68, 69.]

It will be noticed that plaintiffs in their effort to recover for the damage caused by the Illinois Central Railway are now attempting to hold the principal in the face of a final judgment against them in an action against the agent. This, under the facts involved, they cannot do.

"The weight of authority, however, is that where an agent in a transaction is sued after the termination of his agency, and upon a trial of the merits the issue is determined against the plaintiff, the principal, though not a party to the suit, can avail himself of the judgment as a bar, when he is sued by the same plaintiff on the same cause of action. While the principal, if he had no notice of the former suit, and no opportunity to defend it, may not be concluded by a judgment against his former agent, or made responsible for the agent's bad pleading or blunders in the trial of the cause, because so to conclude him would be to deprive him of his property without due process of law, yet, as regards the plaintiff who has before sued the agent and been defeated, there is no reason why he should not be concluded upon that principle of public policy which gives every man one opportunity to prove his case, and limits every man to one such opportunity. He has had his day in court, and it is immaterial whether he has chosen to test his right as against the principal or the agent in the transaction, provided the issue to be tried was identical as against both. [Castle v. Noyes, 14 N. Y. 329; Emery v. Fowler, 39 Me. 329, and cases cited.]" [Emma Silver Mining Co. (Limited) v. Emma Silver Mining Co. of N. Y., 7 Fed. 401, 408; See, also, L. S. & M. S. R. R. Co. v. Goldberg, 2 Ill. App. 228; Featherson v. Pres., etc., of Newburgh & C. T. Co., 24 N. Y. Supp. 603-605; Hill v. Bain, supra; Hoppin v. Avery, 87 Mich. 551.]

So we think that the court erred in sustaining the objection to the introduction in evidence of the transcript of the record of the proceedings in the Mississippi court and in refusing to give defendant's instruction No. 9. As the cause no doubt will be retried and plaintiffs will attempt to show damages sustained to the animals at Centralia, it is necessary for us to pass upon another question. Plaintiff Brown testified that he visited the barn of Green & Sons seven or eight days after the stock was delivered to defendant and there saw the animals and that they were not being fed and were standing in mud; that there was no water in the troughs and that they had no feed of any kind. The witness was permitted to testify over the objection of defendant as to a conversation had at the time with one Josh Guthrie, a negro employee of Green & Sons. The witness testified to the effect that Guthrie told him that he had been looking after the horses but that he did not have time to do it; that he had been digging up trees in Mr. Green's yard. Brown testified that Guthrie at that time threw down some musty hay for the horses. There is no theory of law under which this testimony concerning the admission of Guthrie can be admitted. Conceding that he was an agent of the defendant, or of defendant's agent, in the matter of feeding and caring for the stock, he could not bind defendant by a statement of a past transaction, that is, to the effect that he had not been feeding the stock. [Parr v. Ins. Co., 178 Mo. App. 155; Robinson v. Bush, 199 Mo. App. 184, 190; Atkinson v. School of Osteopathy, 240 Mo. 338, 355-358; State ex rel. Bankers Life Co. v. Reynolds, 277 Mo. 14; Redmond v. Railroad, 185 Mo. 1, 11, 12; Barker v. Railroad, 126 Mo. 143, 147; Sinclair v. Railroad, 253 S. W. 380, 382.] The judgment is reversed and the cause remanded. *Arnold, J.*, concurs; *Trimble, P. J.*, absent.