Lester COX, Appellant,

v.

CITY OF FREEMAN, MISSOURI, and
C. Kenneth Maib, Appellees.

No. 17196.

United States Court of Appeals
Eighth Circuit.

July 19, 1963.

888

Rodger J. Walsh Linde, Thomson, Van Dyke, Fairchild & Langworthy, Kansas City, Mo., for appellant.

Charles V. Garnett, Kansas City, Mo., for appellees.

Don F. Whitcraft, Harrisonville, Mo., for appellee City of Freeman.

Charles V. Garnett and Dan Boyle, Kansas City, Mo., for appellee Maib.

Before VAN OOSTERHOUT and BLACKMUN, Circuit Judges, and YOUNG, District Judge.

YOUNG, District Judge.

This is a diversity action brought by Cox, a citizen of Kansas, against the City of Freeman, Missouri, and Maib, a citizen of Missouri.

This action arises out of an agreement between the appellant, Lester Cox, and the City of Freeman, Missouri, under which Cox contracted to build the City a waterworks. This contract was let in four parts; an agreement to build Parts I, II, and IV of the waterworks was entered into on the 28th day of April, 1959, and the contract to build Part III was dated June 10, 1959. Part I was the distribution system or water lines in the city. Part II was the earth-filled dam for the lake, Part III was for the purification plant, and Part IV was for the water storage standpipe or water tower.

There is some dispute as to whether Cox had 90 days to finish the whole contract or 90 days for each Part, but, at any rate, Cox received written notice to proceed with portions of the contract on August 5, 1959, and he then had 15 days to commence work on the job; the State Department of Health approved the waterworks on May 4, 1960, and an extension of time to paint was granted until August 5, 1960.

Sometime around the middle of June 1960 it became obvious that the parties were in disagreement about the amount of money which the City owed Cox; Cox contending that the City owed him $10,303.34, and the City demanding that the bill be reduced because of delays in the completing of the job. On June 19, 1960, the City officials, Maib (City Engineer), and Cox attended a meeting to negotiate a final settlement. At this meeting an "Agreement" was entered into which stipulated, *inter alia*, the City owed Lester Cox $73,315.20 on the contract less $68,188.05 already paid, leaving a balance due of $5,127.15 subject to certain conditions which were then set out;[1] included in this list was a qualification referring to provision No. 1.18 of

1. "Whereas, the City of Freeman, Missouri and Lester R. Cox entered into a written contract on 4–28–59 for the construction of a water supply system for the City

the original construction contract. This provision provided for a deduction from the final payment to Cox damages incurred by the City caused by the contractor's delay in completing the waterworks.[2]

On September 28, 1960, the defendant Maib wrote Cox a letter in which he said: "In keeping with the General Conditions of the Agreement and supplement agreement dated June 15, 1960, relative to the captioned project I have certified to the owner *final payment* to you as follows: * * *." Maib then went on to list the debits against the $5,127.15 mentioned in the June 15th instrument;[3] included in this list are charges against Cox for painting, minor repairs, and one unexplained entry to "Troth Plumbing Co.," which come to a total of $468.00, but by far the largest debit is the "penalty" due for the alleged four and one-fifth months' overtime, which amounts to $3,956.40. The debits listed, subtracted from the $5,127.15, leave a "Net amount due Cox Trenching" of $702.75. Maib enclosed three checks[4] made out to Cox and, in two cases, other parties, which totaled the $702.75 which Maib alleged that the City owed Cox.

At the trial Cox testified that he received the checks just mentioned and

---

of Freeman, and whereas a dispute has arisen as to the amount due Lester R. Cox upon completion of said construction work, now therefore, in mutual consideration, one to the other, it is agreed that Lester R. Cox has a sum of $73,315.20 due on said contract, less $68,188.05 already paid, leaving a balance due of $5,127.15 subject to the following conditions in keeping with general conditions, with plans and specifications:

1. Lester R. Cox to paint and letter water tower.
2. Lester R. Cox to complete cleaning up.
3. Total net amount due Lester R. Cox subject to General Conditions provision No. 1.18.
4. City of Freeman to check wiring at plant to see if it conforms with specification, if not, then Lester R. Cox to alter the wiring so it will comply with specifications.
5. Lester R. Cox to furnish pressure gauge on Chlorinator as specified in specifications.
6. Lester R. Cox to furnish and install one additional fuse in the Syntron Feeder as required by specifications.
7. Lester R. Cox to furnish and install locking devise on clear well lid as provided by specifications.
8. The clear well was set higher than called for in specifications, necessitating installing electrical controls on felat valves by the City, resolving the question as to who pays for this additional item, the engineer, the City or Mr. Cox.

"Signed this 15th day of June, 1960.
"City of Freeman, Mo.
by /s/ Melvin L. Doyle Mayor
/s/ Lester R. Cox
Lester R. Cox"

2. "1.18 EXTRA ENGINEERING. In case the contractor shall fail to complete the work herein contemplated within the time herein provided, he shall have deducted from the final payment for the work herein contemplated an amount equal to the cost of the engineer to the City after the period herein provided for doing the work, which shall be at the rate of Six Hundred Dollars ($600.00) per month per resident engineer and/or inspector maintained on the project during the period of overtime construction. It is provided further that in the event that the Contractor shall fail to complete this contract as per schedule, an amount equal to the total interest costs for the period of overrun for all bonds issued for this project, shall also be deducted from the contract price."

3. "1. Painting of the Standpipe ...................$ 225.00
2. Lettering of the Standpipe .................. 21.00
3. Pressure Gauge on Chlorinator ........... 2.00
4. Credit for 2 ea. Stainless Steel Floats to be returned in good condition @ $25 ea. .......... 50.00
5. Wiring correction in Plant ................. 40.00
6. Penalty—four and one-fifth (4⅕) months overtime ............... 3956.40
7. Troth Plumbing Co. ..... 130.00"

4. Check No. 120, Lester Cox Trenching Co., $25.34; Check No. 121, Universal Mfg. Co., $582.47; Check No. 122, Lester Cox Trenching Co. & Uhrich Supply, $94.94.

"cashed them or paid the indicated checks to suppliers."

On September 29, 1960, Cox filed a complaint against the City and Maib. Cox sued the City, alleging that it still owed him on the contract, and in tort for negligently hiring Maib and for the alleged negligence of Maib under the doctrine of respondeat superior.[5] Cox sues Maib in tort contending that Maib, acting as the agent, servant, and employee of the City, was negligent in that he caused, while acting as engineer, certain "unnecessary delays to the plaintiff in completing the contract * * *." These alleged delays were that Maib:

"(a) Caused an unnecessary delay on the completion of the line to the lake by his failure to have the necessary engineering completed before the City gave the written notice to start work and damaged the plaintiff in the amount of Six Thousand Four Hundred ($6,400.00) Dollars;

"(b) Caused an unnecessary delay on the location of the tower site by his failure to have the necessary engineering completed before the City gave the written notice to start work, and damaged the plaintiff in the amount of Two Thousand ($2,-000.00) Dollars;

"(c) Caused an unnecessary delay on the location of the plant site by his failure to have the necessary engineering completed before the City gave the written notice to start work, and damaged the plaintiff in the amount of One Thousand Three Hundred Thirty-two ($1,332.00) Dollars;

"(d) Caused an unnecessary delay on the trenching of rock near Highway 2 by his failure to have the necessary engineering completed before the City gave the written notice to start work, and damaged the

plaintiff in the amount of One Thousand Seven Hundred Four ($1,704.-00) Dollars;

"(e) Caused an unnecessary delay on the completion of the contract by his negligence and carelessness in over-pressuring the water lines, in rupturing the lines by putting pressure in the lines exceeding the amount specified in testing, in failing to engineer a surge chamber for the high service pump and damaged the plaintiff in the amount of Two Thousand ($2,000.00) Dollars;

"(f) Caused an unnecessary delay on the completion of the contract by failing to appoint qualified resident engineers or inspectors and by failing to be present on the project or to be located, the numerous discrepancies in the contract, drawings and specifications could not be resolved and the plaintiff was damaged thereby."

█ It is apparent that almost the entire dispute between the parties concerns whether or not Maib or the City, through Maib, acted with such negligence that Cox was delayed in his work and was thereby damaged. It is true that if there was negligence on the part of Maib, both he and the City would be liable except for the possibility of an accord and satisfaction, Maib as a tort-feasor and the City under the doctrine of respondeat superior.

On March 8, 1962, the defendants separately moved for summary judgment, alleging that the June 15th agreement and the September 28, 1960 letter, with checks attached, from Maib to Cox amounted to an accord and satisfaction. Judge Gibson overruled the motions for summary judgment primarily because the June 15th document was without "sufficient specificity" to be capable of enforcement. The Court went on to hold

5. It should be noted that the City was not charged with any independent negligence in delaying the construction of the project except that it was negligent in hiring the defendant Maib. There was absolutely no evidence that the City was negligent in hiring Maib, nor that Maib was not a qualified engineer, and this issue passes out of the case.

that the letter of September 28, 1960, along with the checks enclosed, could amount to an accord and satisfaction if plaintiff had accepted the checks as full payment of the obligation, but, Judge Gibson went on to say, "the mere retention of a check by a creditor will not amount to an accord and satisfaction, without some use or cashing of the check by the debtor." At this time there was no evidence that Cox had cashed or otherwise used the three checks enclosed in Maib's letter.[6]

The case went to trial, and at the end of the plaintiff's case the trial court directed a verdict against the plaintiff. Cox has appealed the District Court's decision.

 Plaintiff contends that the trial court erred in directing a verdict for the defendant because it deprived him of right of trial by jury which is guaranteed by the Seventh Amendment to the United States Constitution. This argument is not legally nor practically sound. A directed verdict does not deprive the plaintiff of any right guaranteed to him by the Seventh Amendment to the United States Constitution. Galloway v. United States, 319 U.S. 372, 63 S.Ct. 1077, 87 L.Ed. 1458 (1943), see Part III of the opinion. Further, Cox is precluded from raising this Constitutional issue here, as he failed to do so below. Sutton v. Settle, 302 F.2d 286 (8th Cir. 1962).

 Plaintiff next contends that the defendants did not state specific grounds for their motions for a directed verdict as required under Rule 50(a)[7] of the Federal Rules of Civil Procedure, and the City did not allege the accord and satisfaction nor did the City plead the document entered into on June 15, 1960, or the letter from Maib to Cox on September 28, 1960. For authority to support this contention the plaintiff relies upon a line of cases which hold that when a movant fails to state specific grounds for

the motion he cannot contest the denial upon appeal. 2B Barron and Holtzoff § 1073 n. 11. In the next sentence, however, Barron and Holtzoff declare that: "Conversely, if such a motion is granted, the adverse party who did not object to failure of the motion to state specific grounds therefor cannot raise such objection in the appellate court." 2B Barron and Holtzoff § 1073, n. 12. Quint v. Kallaos, 161 F.2d 605 (8th Cir., 1947) is cited as authority for this proposition. This would appear to be the soundest doctrine; it would certainly be an unfair and dilatory practice to allow a plaintiff to raise this issue at the appellate level after remaining silent when the trial judge makes his decision. In addition, it would abrogate the settled rule that issues which are not raised at trial cannot be presented on appeal. See Kern v. Prudential Insurance Company of America, 293 F.2d 251 (8th Cir. 1961); Sutton v. Settle, supra. We hold that an adverse party who does not object at trial to his opponent's failure to state a specific grounds for a motion for a directed verdict will not be heard to complain of this lack of specificity on appeal.

 Although the record is not completely clear with regard to the reason for trial judge's decision to grant the defendants' motions for a directed verdict, we think it is apparent that the District Judge felt that there had been an accord and satisfaction. The plaintiff contends strenuously that no accord and satisfaction was reached in this case. He argues that the June 15th agreement was not sufficiently specific nor did it have sufficient consideration to support it; we find ourselves in agreement with this argument, but it is also our opinion that both the June 15th document, the letter from Maib to Cox on September 28, 1960, and Cox's subsequent use of the checks enclosed should all be considered in determining whether or not there is an accord and satisfaction.

---

6. As I have mentioned earlier, it is now admitted by Cox that he did cash or use the checks to his own personal advantage.

7. The appropriate portions of Rule 50(a) of the F.R.C.P. provide that: " * * * A motion for a directed verdict shall state the specific grounds therefor."

■■ This court, is, of course, bound by the law of Missouri in this, a diversity action, and Brent v. Westerman, 123 F. Supp. 835 (W.D.Mo.1954), states the Missouri rule with clarity:

"* * * It is the settled law in Missouri that if there be a controversy between a claimant or creditor and a tortfeasor or debtor and, after discussion of the substance of the claim, the tortfeasor or debtor tenders to the claimant or creditor some amount, *upon the condition* that its acceptance will be in full settlement of all claims, and the claimant or creditor accepts the tender, an accord and satisfaction results as a matter of law (even though the creditor may protest the adequacy of the amount, or even state other conditions of his acceptance), for the simple and good reason that one who accepts a conditional tender assents to the conditions of the tender, Gulfport Wholesale Lumber Co. v. Boeckeler Lumber Co., Mo.App., 287 S.W. 799, 800, as he must accept the tender as made or not at all."

■ The June 15th agreement proves conclusively that there was an argument with regard to Cox's claim and that the parties met and discussed the substance of the claim. The letter of September 28, 1960, establishes the tender to the claimant, who in this case was, of course, Cox. And Cox's use of the checks for his own advantage presents indisputable evidence that he accepted the tender. It is therefore the judgment of this Court that an accord and satisfaction resulted between Cox and the City.

■ Plaintiff urges that the District Judge changed his mind as to the accord and satisfaction and therefore prejudiced him. We cannot accept this argument; another element of fact was added after the trial court's dismissal of the motion for summary judgment—the evidence established that Cox had received the benefit of the payment of the checks. Counsel for plaintiff was well aware that the District Judge had specifically mentioned that the September 28th letter might be an accord and satisfaction, but that there was no evidence that the plaintiff had ever "cashed or otherwise used the checks," and that under Missouri law (citing Brent v. Westerman, supra) "the mere retention of a check by a creditor will not amount to an accord and satisfaction, without some use or cashing of the check by the debtor," and he was, therefore, certainly advised that if the additional element of cashing or using the checks crept into the case the Court might find an accord and satisfaction.

By far the most difficult question presented in this case arises from the plaintiff's contention that the accord and satisfaction between the City and Cox did not absolve Maib since he was not a party to the accord and satisfaction.

■ Assuming without deciding that Maib was not a party to the accord and satisfaction, it is our opinion that the release of the principal—the City of Freeman—also released Maib, the agent of the principal.

■ A judgment in favor of the principal absolves the agent when the only issues to be tried in each case are negligence and contributory negligence. Cf., Brown v. Wabash Ry. Co., 222 Mo.App. 518, 281 S.W. 64 (1926). Although there is an accord and satisfaction instead of a judgment, we think that this is an analogous situation; however, it is not necessary that we stop here. In Annot., 126 A.L.R. 1199 (1940) entitled *Release of (or covenant not to sue) master or principal as affecting liability of servant or agent for tort, or vice versa,* we learn that: "The great weight of authority supports the proposition that where both master and servant are liable to a third party for a tort of the servant, a valid release of either master or servant from liablity for the tort operates to release the other, although in some of the cases it is conceded that the master and servant are not, strictly speaking, 'joint tortfeasors,' in view of the fact that the master's only liability rests upon the doctrine of respondeat superior."

 Although we have not found any Missouri cases on all fours with the circumstances in the case at bar, it does appear that the Missouri Supreme Court has recently aligned itself—by way of dictum—with the "great weight of authority." In Max v. Spaeth, 349 S.W.2d 1 ( Mo.Sup.Ct.1961), the Missouri Supreme Court held that:

"* * * A valid release of a servant from liability for tort operates to release the master. 35 Am.Jur. 963, Master and Servant, Sec. 535; (this is what the case is authority for) Annotation, 126 A.L.R. 1199; Restatement of Agency, Sec. 217A; Restatement of Torts, Secs. 883, 885; *likewise release of the master releases the servant;* see also Geib v. Slater, 320 Mich. 316, 31 N.W.2d 65; Minery v. Fenton, 29 N.J. 409, 149 A.2d 245; Mid-Continental Pipeline Co. v. Crauthers, Okl., 267 P.2d 568; Terry v. Memphis Stone & Gravel Co., 6 Cir., 222 F.2d 652." (Emphasis supplied)

The contract of accord and satisfaction entered into by the City and Cox certainly dealt not only with the City's alleged contractual liability but its liability under the theory of respondeat superior for the alleged acts of negligence by Maib [8] (as has been mentioned earlier, there is absolutely no evidence that the City was negligent in hiring Maib). Therefore, the accord and satisfaction covered the allegedly negligent acts of Maib, and under the theory espoused by the above authorities, the defendant Maib was absolved by the accord and satisfaction contract between Cox and the City of Freeman.

 There is yet another reason why we feel that the District Court should be affirmed. As Judge Blackmun said in Campbell v. Village of Silver Bay, 315

F.2d 568, 575 (8th Cir. 1963): "* * * the standard for review here on a doubtful question of state law is only whether the trial court has reached a permissible conclusion; * * *." The Court in the Campbell case went on to say that the party seeking to overthrow the District Court's judgment with regard to the applicable state law is faced with a heavy burden. We think the decision of the lower court was correct, but even if the State of Missouri law is in doubt on the issues involved, the appellant has failed to sustain his burden and establish that Judge Gibson did not reach a permissible conclusion.

The judgment of the District Court is affirmed.

---

8. It must be remembered here that the September 28th letter, which made up an integral part of the accord and satisfaction, stated that the checks enclosed were in "full payment" of all claims. Therefore, the claims of Cox with regard to Maib's alleged negligence had to be included in this settlement and the City would be liable for them under respondeat superior.