TIBER HOLDING CORPORATION, REGIS INSURANCE COMPANY, AND CHARTER CAPITAL CORPORATION, PLAINTIFFS v. MICHAEL J. DiLORETO AND WIFE, CAMILLE DiLORETO, DEFENDANTS

No. COA02-1389

(Filed 7 October 2003)

**Appeal and Error— preservation of issues—directed verdict and j.n.o.v.—issues not raised**

The trial court did not err by denying plaintiff's motion for judgment n.o.v. in an action arising from the allegedly fraudulent transfer of property. Plaintiffs are procedurally precluded from making the evidentiary showing necessary to set aside the jury verdict for defendant because they did not raise at trial the issues upon which they now rely.

Appeal by plaintiffs from judgment filed 5 March 2002 and from order filed 26 April 2002 by Judge Quentin T. Sumner in Currituck County Superior Court. Heard in the Court of Appeals 21 August 2003.

*Poyner & Spruill LLP, by J. Nicholas Ellis, for plaintiff-appellants.*

*Hornthal, Riley, Ellis & Maland, L.L.P., by L.P. Hornthal, Jr., for defendant-appellees.*

BRYANT, Judge.

Tiber Holding Corporation, Regis Insurance Company, and Charter Capital Corporation (collectively plaintiffs) appeal a judgment entered 5 March 2002 in favor of defendants Michael J. DiLoreto and his wife Camille DiLoreto and an order entered 26 April 2002 denying plaintiffs' motion for a judgment notwithstanding the verdict and a new trial.

On 30 September 1999, plaintiffs filed a complaint against defendants alleging they had been damaged by a fraudulent transfer of certain property by Mr. DiLoreto to himself and his wife as tenants by the entirety. In April 1996, plaintiffs had obtained a large monetary judgment against Mr. DiLoreto for wrongful conversion, fraud, and breach of fiduciary duty. On 21 November 1996, a date prior to the execution of this judgment, Mr. DiLoreto conveyed real property previously titled solely in his name to himself and his wife as tenants by the entirety. When this case went to trial, Mrs. DiLoreto testified that when the real property in question was bought in 1987, she believed herself to be a joint owner. It was only at a meeting with their attorney to discuss the preparation of wills in April 1996 that Mrs. DiLoreto discovered the property was titled only to her husband. According to Mrs. DiLoreto, Mr. DiLoreto's subsequent conveyance of the property to himself and his wife was a correction of this error.

At the close of the evidence, plaintiffs moved the trial court for a directed verdict. The motion was based on plaintiffs' contention that (1) "no value ha[d] been paid" for the 21 November 1996 transfer and (2) Mrs. DiLoreto had notice at the time of the transfer that the property was titled solely in her husband's name and that her husband was subject to a lawsuit by plaintiffs. The trial court denied plaintiffs' motion, and the case was submitted to the jury for deliberations. The jury subsequently returned a verdict finding that: (1) when Mr. DiLoreto transferred the subject property to himself and his wife, he retained sufficient assets to pay his existing creditors;[1] (2) the transfer did not constitute a voluntary conveyance; (3) Mr. DiLoreto did not transfer the property with the intent to hinder, delay, or defraud his creditors; and (4) Mrs. DiLoreto did not participate in or have actual knowledge of a purpose and intent to delay, hinder, or defraud her husband's creditors. Following the entry of judgment on 5 March 2002 denying plaintiffs' claim, plaintiffs filed a motion, on 8 March

---

1. These assets included Mr. DiLoreto's twenty-three percent stock ownership in Tiber Holding Corporation.

2002, for judgment notwithstanding the verdict and, alternatively, a new trial contending that the uncontroverted evidence was contrary to the jury's answers on all four issues to be decided. The trial court denied the motion.

The dispositive issue is whether plaintiffs have preserved for appeal the question of the sufficiency of the evidence for purposes of establishing a fraudulent conveyance.

The law of fraudulent conveyances in North Carolina in 1996, the time Mr. DiLoreto made the transfer in question, is set forth in *Aman v. Walker*, 165 N.C. 224, 81 S.E. 162 (1914). In *Aman*, our Supreme Court listed three separate principles[2] under which a conveyance would be classified as fraudulent: (1) "[i]f the conveyance is voluntary, and the grantor did not retain property fully sufficient and available to pay his debts then existing"; (2) "[i]f the conveyance is voluntary and made with the actual intent upon the part of the grantor to defraud creditors, . . . although this fraudulent intent is not participated in by the grantee, and although property sufficient and available to pay existing debts is retained"; and (3) "[i]f the conveyance is upon a valuable consideration, but made with the actual intent to defraud creditors on the part of the *grantor*, participated in by the *grantee* or of which he has notice." *Id.* at 227, 81 S.E. at 164.

In their brief to this Court, plaintiffs contend the trial court erred in denying their post-verdict motion because the evidence established that the transfer was not "upon valuable consideration," *id.*, and was therefore a voluntary conveyance. Plaintiffs then proceed to explain why under the two principles for voluntary conveyances, the evidence was also undisputed on the issue of Mr. DiLoreto's intent to defraud and his failure to retain sufficient property to pay his debts. Thus, according to plaintiffs, the trial court should have ruled as a matter of law that the transfer by Mr. DiLoreto was fraudulent under the first two principles in *Aman*.[3]

---

2. *Aman* actually lists five principles; however, two of those address what is not a fraudulent conveyance. *Aman*, 165 N.C. at 227, 81 S.E. at 164.

3. In their brief, plaintiffs also argue that the evidence was clear that Mrs. DiLoreto participated in and had knowledge of her husband's scheme to delay, hinder, or defraud his creditors, an element of the third *Aman* principle, but continue to insist that Mrs. DiLoreto "had not paid anything of value to [her husband] for the transfer." Since principle 3 only applies to a "conveyance [based] upon a valuable consideration," we therefore do not address this argument. *See Aman*, 165 N.C. at 227, 81 S.E. at 164.

This argument is without merit for the simple reason that plaintiffs cannot rely on principles 1 and 2 on appeal when they based their motion for a directed verdict only on one element contained in those principles, i.e. a lack of valuable consideration, and an element only relevant to principle 3, i.e. Mrs. DiLoreto's notice of the titling of the property and the lawsuit against her husband. *See Broyhill v. Coppage*, 79 N.C. App. 221, 225, 339 S.E.2d 32, 36 (1986) ("[a] motion for directed verdict must state the grounds therefor . . . and grounds not asserted in the trial court may not be asserted on appeal"); *see also Smith v. Carolina Coach Co.*, 120 N.C. App. 106, 114, 461 S.E.2d 362, 367 (1995); *Lee v. Tire Co.*, 40 N.C. App. 150, 156, 252 S.E.2d 252, 256-57 (1979) (" '[a] motion for judgment notwithstanding the verdict is technically only a renewal of the motion for a directed verdict made at the close of all the evidence, and thus the movant cannot assert grounds not included in the motion for directed verdict' ") (citation omitted). As to the elements of principles 1 and 2 that went unchallenged by the motion for directed verdict, the jury found that Mr. DiLoreto did not intend to hinder, delay, or defraud his creditors and that he retained sufficient property to pay his creditors. Accordingly, we are bound by the jury's verdict as to these issues, and plaintiffs are procedurally precluded from making the evidentiary showing necessary to set aside the jury verdict or to justify a new trial. *See Lee v. Rice*, 154 N.C. App. 471, 474, 572 S.E.2d 219, 221 (2002) ("[a] motion for a directed verdict tests the legal sufficiency of the evidence").

Affirmed.

Judges McGEE and GEER concur.