JEAN PEEK FORD, Plaintiff,
v.
BETH CUMMINGS RODRIGUEZ, Defendant/Third-Party Plaintiff,
v.
GRAHAM MICHAEL FORD, Third-Party Defendant.
No. COA08-1266.
Court of Appeals of North Carolina.
Filed: July 7, 2009.
This case not for publication
E. Gregory Stott for Plaintiff-Appellant.
Pinto Coates Kyre & Brown, PLLC, by G. Clark Hering, IV and David G. Harris, II, for Defendant/Third-Party Plaintiff-Appellee Beth Cummings Rodriguez.
STEPHENS, Judge.
On 7 December 2005, Jean Peek Ford ("Plaintiff") filed a complaint requesting monetary damages from Beth Cummings Rodriguez ("Defendant") for property damage sustained to her vehicle from an automobile accident involving Plaintiff's and Defendant's vehicles. Defendant filed an answer on 10 February 2006 denying negligence and asserting a third-party claim against Graham Michael Ford ("Graham"), Plaintiff's son, who was driving Plaintiff's vehicle at the time of the accident.
This matter was heard before a jury on 14 January 2008. At trial, Plaintiff presented testimony from several witnesses, including Graham and Officer Mario Campos ("Officer Campos") of the Raleigh Police Department. Graham testified to the following: Graham and Defendant were involved in a car accident at approximately 4:00 p.m. on 10 November 2005 at the intersection of Churchill Road and Banbury Road in Raleigh, North Carolina. The afternoon of the accident, Graham was driving home from school on Churchill Road, and had two other passengers in the car with him. Graham was familiar with Churchill Road as it was his usual route home; the car radio was on, and it was a clear, sunny day.
Graham was driving approximately at or below the posted speed limit of 35 miles per hour down the semi-steep hill on Churchill Road as it approaches the intersection with Banbury Road. Graham "noticed [Defendant's] car pulled in front of the stop sign about even with the curb." As Graham proceeded down the hill, "[Defendant] pulled farther into the intersection and when [Graham] started coming into the actual intersection, [Defendant's] car lurched forward into [Graham's] lane of traffic" causing Graham to swerve to avoid hitting Defendant. As he applied his brakes, Graham left skid marks measuring 70 feet in length. Graham traveled through the intersection, drove over a curb, and then traveled approximately 30 feet further before crashing into a tree. As a result, the air bags deployed, and the front end of Plaintiff's car was damaged. Graham testified that had he not swerved, he would have "cut off the whole front of [Defendant's] car."
After the accident, Graham and the two passengers exited Plaintiff's car quickly. Defendant drove through the intersection and parked her car on the side of Banbury Road. She then came over to check on Graham and the two passengers and offered to call 911.
Plaintiff also presented the testimony of Officer Campos, who testified to the following: Officer Campos arrived at the scene of the accident within three to five minutes of its occurrence. Officer Campos spoke with both Graham and Defendant and prepared a Standard Vehicle Collision Report. Defendant told Officer Campos that she had stopped at the stop sign on Banbury Road, but that her view was obstructed by a tree, so she continued to move forward slowly in order to have a clear view of Churchill Road. Officer Campos confirmed that the view was obstructed at the stop sign on Banbury Road and saw that in order to have a clear view of Churchill Road, it would be necessary to go to the curb but that it would not be necessary to go far into the intersection.
Defendant showed Officer Campos how far she moved beyond the stop sign and told Officer Campos that the front end of her car went approximately three to four feet beyond a manhole. Graham testified that this manhole is located near the middle of the intersection but still on Defendant's side of Churchill Road. According to Officer Campos, three to four feet beyond the manhole is very close to the center of the Churchill and Banbury intersection. Defendant also told Officer Campos that Graham had been speeding at the time of the accident.
At the close of Plaintiff's evidence and at the end of all evidence, both parties made motions for directed verdicts. Plaintiff made oral motions for directed verdicts on the issues of negligence and contributory negligence. Both parties' motions were denied.
The jury found that (1) Plaintiff's property was damaged by the negligence of Defendant, and (2) that Plaintiff's son's negligence contributed to Plaintiff's property damage. The trial court entered judgment in accordance with the jury's decision, and ordered that Plaintiff recover nothing from Defendant. The trial court also granted Defendant's motion for costs, to allow for the recovery of $586.75, which was the cost of depositions of Graham and Officer Campos.
On 24 March 2008, Plaintiff filed a motion for judgment notwithstanding the verdict and for a new trial pursuant to Rules 50, 59, and 60 of the North Carolina Rules of Civil Procedure. In an order entered 2 June 2008, the trial court denied Plaintiff's motion. Plaintiff appeals from the trial court's judgment in favor of Defendant and from the trial court's order denying Plaintiff's motion for judgment notwithstanding the verdict and for a new trial, and granting Defendant's motion for costs.

I. Directed Verdict
Plaintiff argues the trial court erred by denying Plaintiff's motions for directed verdict on the issue of contributory negligence. Defendant contends that Plaintiff failed to preserve this argument for our review. We agree with Defendant's contention. "A motion for a directed verdict shall state the specific grounds therefor." N.C. R. Civ. P. 50(a). In Pergerson v. Williams, 9 N.C. App. 512, 516-17, 176 S.E.2d 885, 888 (1970), this Court held that
Rule 50(a) expressly requires that a motion for a directed verdict "shall state the specific grounds therefor." The record before us does not affirmatively disclose that specific grounds were stated for defendant's motion. However, plaintiff did not object at the trial to the failure of defendant to state specific grounds for his motion. "If the court denies a motion for a directed verdict which fails to state the specific grounds for the motion, the moving party may not complain of the denial on appeal. Conversely, if such a motion is granted, the adverse party who did not object to failure of the motion to state specific grounds therefor cannot raise such objection in the appellate court." 2B Barron and Holtzoff, Federal Practice and Procedure, § 1073, p. 370; accord, Cox v. City of Freeman, Missouri, 321 F. 2d 887 (8th Cir. 1963).
Id. (emphasis added).
The record before us fails to demonstrate that Plaintiff stated the specific grounds for her motions for a directed verdict at any time. Plaintiff did not file a written motion at trial setting forth the specific grounds for her motion for a directed verdict. Further, Plaintiff did not provide a transcript of any oral statement made during trial in support of such a motion. It is immaterial that Defendant failed to object at trial to Plaintiff's failure to state specific grounds for her motion, as the motion was denied and Defendant is not the appealing party. By failing to identify the grounds for her motion to the trial court, Plaintiff has waived her right to assert those grounds on appeal. See id.; see also Tiber Holding Corp. v. DiLoreto, 160 N.C. App. 583, 586, 586 S.E.2d 538 (2003) (Where the specific issues regarding the sufficiency of the evidence presented in plaintiff's appeal of a judgment in favor of a husband and wife in a fraudulent transfer of property action had not been presented to the trial court in plaintiff's motion for directed verdict, the appellate court was precluded from considering them.); Lee v. Bir, 116 N.C. App. 584, 587, 449 S.E.2d 34, 37 (1994) ("Because defendant failed to assert the insufficiency of the evidence to support plaintiffs' action for trespass or an award of actual damages as grounds for his motion for a directed verdict, defendant has waived his right to appellate review of these issues."), cert. denied, 340 N.C. 113, 454 S.E.2d 652 (1995). Accordingly, Plaintiff's appeal from the trial court's denial of her motion for directed verdict is dismissed.

II. Judgment Notwithstanding the Verdict and New Trial
Plaintiff also argues the trial court erred in denying her motion for judgment notwithstanding the verdict and for a new trial. "A motion for judgment notwithstanding the verdict is technically a renewal of the motion for a directed verdict." Harvey v. Norfolk Southern Railway Co., 60 N.C. App. 554, 556, 299 S.E.2d 664, 666 (1983). A specific directed verdict motion is a prerequisite for a judgment notwithstanding the verdict. Garrison v. Garrison, 87 N.C. App. 591, 595, 361 S.E.2d 921, 924 (1987). The purpose of this rule "is to allow the adverse party to meet any defects in his case with further proof and thus avoid the entry of a judgment notwithstanding the verdict at the close of the trial on a ground that could have been met with proof had it been suggested earlier." Id. at 595-96, 361 S.E.2d at 924. Thus, based on our holding with respect to Plaintiff's motion for a directed verdict, we also dismiss Plaintiff's appeal from the trial court's denial of her motion for judgment notwithstanding the verdict.
A proper motion for a directed verdict is not, however, a prerequisite for a motion for a new trial under Rule 59(a). Id. at 595, 361 S.E.2d at 924; see N.C. R. Civ. P. 59(a). Therefore, we address the merits of Plaintiff's argument regarding the trial court's denial of her motion for a new trial. Under Rule 59(a), a new trial may be granted where the evidence is insufficient to justify the verdict or where the verdict is contrary to law. The decision whether to grant a new trial rests in the sound discretion of the trial judge. Sizemore v. Raxter, 58 N.C. App. 236, 237, 293 S.E.2d 294, 294, cert. denied, 306 N.C. 744, 295 S.E.2d 480 (1982). "Absent record disclosure of abuse of discretion, `the order is not subject to review on appeal.'" Id. (quoting Walston v. Greene, 246 N.C. 617, 617, 99 S.E.2d 805, 806 (1957)). Based on a thorough review of the record in this case, we conclude that no abuse of discretion appears.
"Contributory negligence, as its name implies, is negligence on the part of the plaintiff which joins, simultaneously or successively, with the negligence of the defendant alleged in the complaint to produce the injury of which the plaintiff complains." Jackson v. McBride, 270 N.C. 367, 372, 154 S.E.2d 468, 471 (1967).
Our Supreme Court has previously stated that "two elements, at least, are necessary to constitute contributory negligence[.]" Construction Co. v. R.R., 184 N.C. 179, 180, 113 S.E. 672, 673 (1922). The defendant must demonstrate: (1) a want of due care on the part of the plaintiff; and (2) a proximate connection between the plaintiff's negligence and the injury. Id. "There must be not only negligence on the part of the plaintiff, but contributory negligence, a real causal connection between the plaintiff's negligent act and the injury, or it is no defense to the action." Id. (emphasis in original).
Whisnant v. Herrera, 166 N.C. App. 719, 722, 603 S.E.2d 847, 850 (2004).
In support of Plaintiff's argument that the trial court erred in denying her motion for a new trial, Plaintiff's brief simply restates and incorporates by reference Plaintiff's argument regarding the denial of her motion for a directed verdict. In her directed verdict argument, Plaintiff asserts that because Defendant did not offer evidence or testimony at trial, Defendant failed to present more than a scintilla of competent evidence showing that Plaintiff's son was contributorily negligent. See Snead v. Holloman, 101 N.C. App. 462, 464, 400 S.E.2d 91, 92 (1991) ("In the case of an affirmative defense, such as contributory negligence, a motion for directed verdict is properly granted against the defendant where the defendant fails to present more than a scintilla of evidence in support of each element of his defense."). We are not persuaded by Plaintiff's assertion.
In Jacobs v. Locklear, 310 N.C. 735, 736, 314 S.E.2d 544, 545 (1984), the trial court denied the plaintiff's motion for directed verdict and submitted the question of the plaintiff's contributory negligence to the jury even though the defendant did not present any evidence at trial. The jury returned a verdict finding that the plaintiff had by her own negligence contributed to her injury. Id. This Court granted the plaintiff a new trial, and in affirming and modifying our holding, the Supreme Court held that "[i]t was error as a matter of law for the trial court to deny plaintiff's motion for a new trial." Id.
Jacobs is readily distinguishable from the present case. In Jacobs, the defendant did not simply fail to produce evidence of plaintiff's contributory negligence; rather, there was no evidence of contributory negligence. In the present case, however, evidence of Graham's contributory negligence was presented at trial. Contrary to Plaintiff's contention, it is irrelevant that this evidence was not offered by Defendant.
At trial, Officer Campos testified on cross-examination that at the scene of the accident, Defendant told him that she believed Plaintiff's vehicle was traveling at an excessive speed when it approached her vehicle. Officer Campos also testified that Plaintiff's vehicle created skid marks in the roadway measuring 70 feet in length. The skid marks began at the bottom of the "large hill" Plaintiff's vehicle was traveling down, and ended at the curb Plaintiff's vehicle hit before traveling off the road. From the curb, Plaintiff's vehicle left tire marks approximately 30 feet before colliding with the tree. Thus, from the beginning of the skid marks to the tree, Plaintiff's vehicle traveled at least 100 feet.[1] The posted speed limit on Churchill Road was 35 miles per hour. This evidence suggests Plaintiff's vehicle was traveling at an excessive speed when it encountered Defendant's vehicle. This evidence was sufficient to support the jury's verdict that Plaintiff's son was contributorily negligent. Accordingly, we find no abuse of discretion in the trial court's denial of Plaintiff's motion for a new trial. Plaintiff's argument is overruled.

III. Assessment of Costs
By its order, the trial court also granted Defendant's motion for costs "to allow for the recovery of costs of $586.75 representing the cost of depositions of Graham Michael Ford and Officer Campos[.]"[2] Plaintiff assigns error to the trial court's assessment of costs against Plaintiff on the grounds that the trial court's order was contrary to stipulations entered into by the parties and is erroneous as a matter of law.
The record on appeal contains an unsigned document titled "DEFENDANT'S PROPOSED STIPULATIONS[,]" which provides, inter alia, that "[i]f both Plaintiff and Third-Party Defendant recover nothing . . . all parties will bear their own costs, fees and other expenditures incurred in the prosecution and defense of this matter." As this document is unauthenticated, no information as to its origin is contained in the record, and its title suggests it represents a mere proposal, not an actual stipulation, it cannot serve as a basis for overruling the trial court's order assessing costs against Plaintiff. Plaintiff's assignment of error is overruled.
AFFIRMED.
Judges JACKSON and STROUD concur.
Report per Rule 30(e).
NOTES
[1] Plaintiff filed a reply brief on 19 February 2009, in which she argued that Defendant's statements to Officer Campos and the evidence of skid marks created by Plaintiff's vehicle were improperly admitted at trial. Plaintiff has not assigned error to the admission of this evidence, nor did she raise either of these arguments in her original brief on appeal. Thus, the question of whether Defendant's statements to Officer Campos and the evidence of skid marks were properly admitted is not reviewable. N.C. R. App. P. Rule 10(c).
[2] Defendant's motion for costs was otherwise denied.