304 F.2d 646
 Richard G. WOLF, Appellant,
v.
REYNOLDS ELECTRICAL & ENGINEERING CO., Inc., a Texas Corporation; Reynolds Electrical Corporation, a Nevada Corporation; Russell Martin and John Doe Corporation, Appellees.
 No. 17372.
 United States Court of Appeals Ninth Circuit.
 June 26, 1962.
 
 1
 Wahler & Pecyna, Chicago, Ill., Hawkins, Cannon, & Hawkins, and Gordon L. Hawkins, Las Vegas, Nev., for appellant.
 
 
 2
 Morse & Graves, and William R. Morse, Las Vegas, Nev., for appellees.
 
 
 3
 Before CHAMBERS and HAMLIN, Circuit Judges, and JAMESON, District Judge.
 
 
 4
 JAMESON, District Judge.
 
 
 5
 Plaintiff, a citizen of Illinois, instituted this action to recover damages for personal injuries sustained on February 21, 1955, as the result of a collision between a motor vehicle in which plaintiff was riding and a motor vehicle operated by the defendants Reynolds Electrical & Engineering Co., Inc., a Texas Corporation, and Reynolds Electrical Corporation, a Nevada Corporation, through their agent and employee, the defendant Russell Martin, a citizen of Nevada. At the close of plaintiff's case, the trial court entered a judgment of dismissal in favor of all of the defendants. Plaintiff has appealed from this judgment and a subsequent order denying plaintiff's motion for a new trial.
 
 
 6
 The plaintiff, a corporal in the United States Army, was a passenger in a military truck driven by PFC Lunie Turley. The defendant Martin was driving a flatbed truck owned by the United States and rented to the Atomic Energy Commission for use by defendant Reynolds Electrical & Engineering Co., Inc. The flatbed truck was loaded with a one-ton crane, which Martin had fastened to the flatbed with a chain.
 
 
 7
 The truck in which plaintiff was riding was travelling in a northerly direction on a roadway within the confines of a military reservation in the State of Nevada. Defendants' truck proceeded to the roadway from a loading area to the west, turned right and continued in a southerly direction on the roadway. Lieutenant Robert M. Lucarelli, driving a jeep, entered the same roadway from the east, making a left turn to the south, and followed defendants' truck. Lucarelli estimated that he was 200 yards from defendants' truck at the time of the collision.
 
 
 8
 The collision occurred after dark and both trucks were fully lighted. The speed of the truck in which plaintiff was riding was estimated at 30 to 35 miles an hour, and that of defendants' truck at 35 miles an hour. The roadway was straight and level, with a blacktop asphalt pavement, and a white center line dividing two lanes of travel. The weather was clear.
 
 
 9
 Plaintiff testified that he saw the headlights of the approaching vehicle, that the Turley vehicle was "inside the white line on our own side of the road", and that "just after we either came even with the car or just past the cab there was a loud crash and the truck just swerved on the road and was bouncing all around the road, and then we ran into the pole off to the side".[1]
 
 
 10
 Martin testified that after the Turley truck had passed his cab he felt a jar, heard a crash, and saw the Turley vehicle run off the road to the right and into a telephone pole in the ditch on the right (east) side of the highway. Martin's vehicle continued ahead and came to a stop within a short distance. The crane which had been fastened to the Martin truck was in the borrow pit on Martin's right (west) side of the roadway, approximately midway between the two vehicles. A steel I-beam structure[2] was lying a short distance away on the same side of the highway.
 
 
 11
 Lieutenant Lucarelli, whose deposition was taken and offered in evidence by the plaintiff, saw defendants' truck enter the roadway, observed its course from that point to the scene of the collision, and also observed the Turley truck approaching from the opposite direction. He testified that prior to the crash both vehicles were travelling in their proper lanes, with the left wheels of each from two to three feet from the center line. He heard a sound of shattering of glass and screeching of metal; "an enormous crash, at least it seemed so enormous to me for not seeing the vehicles hit one another". He did not at any time observe anything overhanging the side of defendants' truck. The only damage he observed on defendants' truck was "one gash on the bed of the truck toward the back". He examined the steel I-beam structure carefully and did not notice any damage marks on it. According to Lucarelli, there were power lights on the highway approximately 100 feet apart, although these lights were out for a short time after the accident.
 
 
 12
 The defendant Martin, called as an adverse witness by the plaintiff, testified that his truck "had a long gash or scar on the side of the bed about three feet from the rear and * * * the front dual on the outside looked like it had been hit. In other words, scraped". It was "sort of like you would hit a curb or something real hard with one — scraped on the edge, side". He guessed that the gash would be a "little back of" the socket where the chain had been fastened. The truck bed was eight feet wide and 35 feet long. After examining a picture of the truck, Martin testified that the gash to which he referred was in the upper top edge of the left hand side, but that there were also some other marks further down, which were covered in the picture by the officer's arm. He "would say" that the truck bed at the top "was about four and a half feet, close to it".
 
 
 13
 While numerous pictures of the truck and crane were received in evidence, there was no testimony aside from that of Martin and Lucarelli with respect to the damage to defendants' truck, and no evidence regarding any damage to the crane.
 
 
 14
 The case was tried before the court with a jury. Before entry of judgment of dismissal, the trial court made findings of fact and conclusions of law, reciting therein that the defendants had made a motion pursuant to Rule 41 of the Federal Rules of Civil Procedure, 28 U.S.C.A., for a dismissal of plaintiff's case on the "ground that plaintiff had failed to prove a case sufficient for the court or jury". The motion itself does not appear in the record.
 
 
 15
 Rule 41(b) provides in pertinent part: "* * * After the plaintiff has completed the presentation of his evidence, the defendant, without waiving his right to offer evidence in the event the motion is not granted, may move for a dismissal on the ground that upon the facts and the law the plaintiff has shown no right to relief. In an action tried by the court without a jury the court as trier of the facts may then determine them and render judgment against the plaintiff or may decline to render any judgment until the close of all the evidence. If the court renders judgment on the merits against the plaintiff, the court shall make findings as provided in Rule 52(a) * * *."
 
 
 16
 It will be noted that the provision for findings of fact is limited to actions "tried by the court without a jury". Where a motion for dismissal is made pursuant to Rule 41(b) in a jury case, it may properly be treated as a motion for a directed verdict under Rule 50(a).[3] The trial court does not determine the facts, but simply determines whether plaintiff has made a "case for the jury". He does not weigh the evidence, draw inferences therefrom, or evaluate the credibility of witnesses, as he may do in a nonjury case where the judge is the trier of the facts.[4] The procedural error of the trial court in making findings of fact in this case may be disregarded in view of the court's conclusion that there was "no evidence that defendants, or either of them, were negligent in the operation of their truck and trailer, and upon that ground plaintiff's complaint should be dismissed * * *". If this conclusion is correct, the judgment must be sustained as a matter of law.
 
 
 17
 Whether the motion to dismiss be made pursuant to Rule 41(b) or 50 (a), the same rule is applied in determining whether the plaintiff has made a case for the jury. The applicable rule was stated by this court in Hawley v. Alaska Steamship Company, 1956, 236 F.2d 307, 309, as follows: "When ruling upon a motion challenging the sufficiency of a plaintiff's evidence, the question presented is whether there was any evidence upon which the jury could have found negligence on the part of the defendant which was the proximate cause of the injury suffered by plaintiff, when the evidence is viewed in the light most favorable to plaintiff."
 
 
 18
 Appellant contends (1) that there was sufficient evidence from which the jury might find that the defendants were negligent; (2) that the evidence was sufficient to submit the case to the jury upon the theory of res ipsa loquitur; and (3) upon the theory of negligence per se.
 
 
 19
 Each of appellant's contentions is predicated upon the assumption that the crane must have protruded beyond the left side of defendants' truck and trailer and thereby caused the accident. Before plaintiff may recover, however, there must be substantial proof that the crane did in fact protrude and cause the accident. True, this may be established by circumstantial evidence; but we agree with the trial court that there was insufficient evidence, either direct or circumstantial, to justify a finding by a jury that the accident was caused in this manner.
 
 
 20
 The most a jury could conclude from the evidence was the possibility that the accident was caused by something overhanging from defendants' trailer. There is evidence which tends to negative that possibility. The marks and scratches on the front outside dual and the trailer bed, as well as the lack of evidence of any marks or damage to the crane or the steel I-beam structure, are inconsistent with appellant's theory. The evidence suggests other possibilities equally as credible as that advanced by appellant. The finding of negligence by a jury would be a choice of possibilities based on a foundation of speculation and conjecture.
 
 
 21
 It is well settled that proof must be sufficient to raise a reasonable inference that the act or omission complained of was in fact the proximate cause of injury. The verdict of a jury cannot rest on guess or speculation. That defendants' negligence could possibly have been the cause is not sufficient. See Rexall Drug Company v. Nihill, 9 Cir. 1960, 276 F.2d 637, 644, 79 A.L.R. 2d 419.[5] The same rule applies where, as here, the evidence leaves the cause of an accident uncertain. The jury is not permitted to speculate in choosing one of alternative possibilities, but is restricted to reasonable inferences based upon facts. Snow v. Harris, 1919, 41 Cal.App. 34, 181 P. 676, 677; Puckhaber et ux. v. Southern Pac. Co., 1901, 132 Cal. 363, 64 P. 480, 481. "(T)he province of fact finding and inference drawing must be exercised in the realm of probability, not speculation, surmise and conjecture." Independent-Eastern Torpedo Co. v. Ackerman, 10 Cir. 1954, 214 F.2d 775, 777.
 
 
 22
 There being no substantial evidence from which a jury could draw a reasonable inference of negligence, the trial judge properly took the case from the jury and entered judgment of dismissal.[6]
 
 
 23
 Judgment affirmed.
 
 
 
 Notes:
 
 
 [1]
 On cross-examination, plaintiff testified again that this was all he remembered about the accident. On examination by the court, he testified that there was nothing about the way in which the other vehicle approached to indicate excessive speed or irrational driving
 
 
 [2]
 This structure was presumably part of the crane, although the evidence does not show just what it was
 
 
 [3]
 Rule 50(a) provides that, "A party who moves for a directed verdict at the close of the evidence offered by an opponent may offer evidence in the event that the motion is not granted, without having reserved the right so to do and to the same extent as if the motion had not been made. * * * A motion for a directed verdict shall state the specific grounds therefor." For comparison of Rule 41(b) with Rule 50, see 5 Moore's Federal Practice 1043, § 41.13(3), and also comprehensive discussion in United States v. United States Gypsum Co., D.C.D.C.1946, 67 F.Supp. 397, 417, reversed on other grounds, 333 U.S. 364, 68 S.Ct. 525, 92 L.Ed. 746
 
 
 [4]
 See note of Advisory Committee on Rules to Rule 41(b) with particular reference to 1946 amendment
 
 
 [5]
 Prosser on Torts, 2d Ed., p. 222, states the applicable rule as follows: "A mere possibility of such causation is not enough; and when the matter remains one of pure speculation or conjecture, or the probabilities are at best evenly balanced, it becomes the duty of the court to direct a verdict for the defendant."
 
 
 [6]
 Nor can appellant prevail upon the theory of res ipsa loquitur. It is conceded that this doctrine is applicable only where the instrument causing the injury is in the exclusive control of the defendant. Appellant argues that since the crane was in the exclusive control of defendant and was the cause of injury, the doctrine applies. While the crane was admittedly under the exclusive control of the defendant, plaintiff has failed to establish that it was the cause of injury