Robert R. CARROLL, Administrator of the Estate of Jimmie Alston Carroll, Appellant,

v.

SEABOARD AIR LINE RAILROAD COMPANY, Appellee.

No. 10506.

United States Court of Appeals Fourth Circuit.

Argued June 22, 1966.

Decided Jan. 6, 1967.

George Rountree, Jr., Wilmington, N. C. (Ray H. Walton, Southport, N. C., on brief), for appellant.

Ozmer L. Henry, Lumberton, N. C. (Everett L. Henry, Lumberton, N. C., on brief), for appellee.

Before HAYNSWORTH, Chief Judge, BELL, Circuit Judge, and LEWIS, District Judge.

OREN R. LEWIS, District Judge:

The plaintiff's intestate was killed when the automobile in which he was a passenger, which a sixteen-year-old brother was driving, collided with a Sea-

board train at a grade crossing near Eastbrook, North Carolina.

Suit for wrongful death was first commenced in the Superior Court of Brunswick County, North Carolina. The Honorable J. B. Craven, Jr., then a state judge, rendered judgment of nonsuit at the close of the plaintiff's evidence. On appeal to the Supreme Court of North Carolina the judgment was affirmed (Carroll, Admr. v. Seaboard Air Line R. R. Co., 253 N.C. 572, 117 S.E.2d 420, 421) on the ground that the negligence of the driver of the Ford was the sole proximate cause of the tragic accident.

Thereafter this suit was commenced as a diversity action in the United States District Court for the Eastern District of North Carolina upon a different claim of negligence than that alleged in the Brunswick County case, namely—"the engineer's failure to use due care in stopping the train in a distance when it could have been stopped, resulting in folding that little boy up and squashing him."

The defendant promptly moved for summary judgment. This motion was denied on the ground that the action between the same parties in the state court was not res judicata or a bar to the present suit.[1] The suit was then calendared for jury trial.

The testimony of the witnesses, except Nellie Ballard, in the Brunswick County case was summarized[2] by counsel and read to the jury in this case. Most, if not all, of the exhibits used in the Brunswick County case were introduced in this case. The additional evidence in this case consisted of the testimony of an expert (mechanical engineer) called by the plaintiff.

Coble's testimony, rejected in the state court, was re-offered and rejected in this case.

At the conclusion of the plaintiff's case counsel for the defendant moved for involuntary dismissal under Rule 41(b), F.R.Civ.P. The motion was granted, and this claim against the railroad for the wrongful death of the plaintiff's intestate was again dismissed. This appeal followed.

■■ Treating the motion to dismiss under Rule 41(b)[3] as a motion for directed verdict under Rule 50, F.R.C.P., we affirm.

"A trial court * * * has the duty to direct a verdict 'where the evidence is without dispute or is conflicting but of such a conclusive nature that if a verdict were returned for the plaintiff or defendant, as the case may be, the exercise of sound judicial discretion would require that it be set aside'." Martin K. Eby Construction Co. v. Neely, etc., 344 F.2d 482 (10th Cir. 1965).

■■ Our review, however, is limited to a determination of whether the evidence warrants submission of the case to the jury (see Appleman v. United States, 338 F.2d 729 (7th Cir. 1964)), and we must view the evidence in the light most favorable to the plaintiff.

So reviewed, the evidence in both cases discloses:

The plaintiff's intestate, a five-year-old boy, was killed October 19, 1958 about 11:45 a. m. in an automobile-train collision at a grade crossing in Brunswick County where a north-south paved state highway crosses the east-west railroad track of the defendant.

---

1. General Statutes of North Carolina (1953), Sec. 1–25:
"If an action is commenced within the time prescribed therefor, and the plaintiff is nonsuited, * * * the plaintiff * * * may commence a new action within one year after such nonsuit * * *."

2. Mrs. Joe Verzaal and Robert R. Carroll also testified in person.

3. Rule 41(b), as amended July 1, 1963, applies only to non-jury cases. The correct motion in jury-tried cases is now a motion for a directed verdict. It involves no changes in substance. See Notes of Advisory Committee on Rules under Rule 41(b), 28 U.S.C.

The infant was a back-seat passenger in a 1956 Ford. His thirteen-year-old sister was a passenger on the front seat. His sixteen-year-old brother was driving the automobile.

The automobile did not slow down as it approached the grade crossing. Its speed was approximately forty miles per hour. Straight skid marks in the right lane extended twelve feet to the crossing; thence sharply left and off the left side of the highway along the railroad track. All occupants of the automobile were killed.

Southbound motorists were warned by a standard highway sign that they were approaching a railroad track some six hundred feet north of the crossing. A railroad crossarm, located at the crossing, could be seen by southbound motorists as they reached and passed the highway sign.

The view west of the railroad crossing was obstructed by trees, weeds, a residence, shrubs and a lath house until a point was reached approximately fifty feet north of the crossing; thereafter one had an unobstructed view of an approaching eastbound train.

The eastbound train approached the crossing at fifty miles per hour with whistle blowing and bell ringing.

Mrs. Verzaal, the occupant of the residence adjacent to the crossing, augmented her Brunswick County testimony to a limited extent. She testified in the District Court that she went down to where the train stopped—she was not allowed to get very close—and saw the front part of the car in front of the train, the other part was off the track—it had been dragged and was in a battered condition.

Robert Carroll's live testimony in the District Court added little, if anything, to that given in the Brunswick County case.

James R. Benson was qualified as an expert witness (mechanical engineer) and allowed to give his opinion as to the stopping distance of this Seaboard train. He stated the train could have been stopped in 413 feet. The witness had no experience with the operation of diesel locomotives or the type or kind of brakes used on engines of this type. His conclusion was based on a general mathematical formula of weight times friction. No allowance was made for wind velocity, weight of brakes or time lag in applying brakes.

This Court, in Hunt v. Bradshaw, 251 F.2d 103 (1958), stated:

" * * * if the evidence in the second trial is not substantially different from that in the first, then under the law of North Carolina the same result must follow as in the first case."

Such is the case here. There was little, if any, difference in the evidence presented in the District Court than that presented in the Brunswick County case. This unfortunate tragedy was solely caused by the negligence of the driver of the Carroll automobile.

The plaintiff's contention that the District Court erred in refusing to admit the testimony (expert opinion) of R. L. Coble is without merit. This testimony was offered in the state court to show the condition of the body of the deceased. It was there rejected. The Supreme Court of North Carolina perceived no error in that ruling. This rejected testimony was retendered in the District Court case to show that the death of the plaintiff's intestate could have been caused by the jamming of the boy between the front seat and the back seat of the car. The evidence was again rejected on the ground that it had been rejected in the state trial and upon the further ground the witness was not present.

This witness, a mortician, was not qualified to express an opinion as to the cause of death.

Qualification of a witness to express an expert opinion, under both North Carolina and federal law, should be left to the sound discretion of the trial judge. See Pridgen v. Gibson, 194 N.C. 289, 139 S.E. 443, 54 A.L.R. 855; Hunt v. Bradshaw, supra.

Affirmed.