LILLIAN B. SAWYER v. WILLIAM SHACKLEFORD

No. 7012SC360

(Filed 15 July 1970)

**1. Rules of Civil Procedure § 50—  motion for directed verdict**

   Where a motion for a directed verdict is made under Rule 50 at the conclusion of the plaintiff's evidence, the trial judge must determine whether the evidence, taken in the light most favorable to the plaintiff and giving it the benefit of every reasonable inference which can be drawn therefrom, was sufficient to withstand defendant's motion for a directed verdict. G.S. 1A-1.

**2. Landlord and Tenant § 8—  defective stairs — patent defect — injury to plaintiff — directed verdict**

   In plaintiff's action to recover for personal injuries resulting from a fall down the allegedly defective stairs of a beach cottage rented from defendant, the trial court properly granted defendant's motion for a directed verdict at the close of plaintiff's evidence, where there were findings, supported by the evidence, (1) that the defective condition of the stairs was patent and that plaintiff had noticed this condition upon her arrival at the cottage, (2) that plaintiff had vowed a few hours before her fall that she would not use the stairs again, and (3) that plaintiff's negligence in hurrying down the stairs was a contributing cause to her injury.

**3. Landlord and Tenant § 8—  patent defects — duty of landlord**

   A landlord does not normally have a duty to warn his tenant about patent defects in the demised premises.

APPEAL by plaintiff from *Hobgood, J.,* 21 January 1970 Session of CUMBERLAND Superior Court.

Plaintiff was seriously injured when she fell down the steps leading from the second floor to the basement of a beach cottage at Emerald Isle owned by William Shackleford. Plaintiff and her family rented the cottage for the weekend of 29 October 1966 from a rental agent at Emerald Isle.

A motion was made by the defendant for directed verdict under G.S. 1A-1, Rule 50, at the close of the plaintiff's evidence. This motion was granted. Pursuant to a motion entered under G.S. 1A-1, Rule 52, Judge Hobgood made extensive findings of fact and conclusions of law. Judgment was entered for the defendant. In view of the detail of the following judgment, it is deemed unnecessary to provide a further statement of facts on this appeal.

*"JUDGMENT* of HOBGOOD, J.    (Filed Jan. 21, 1970)

   THIS CAUSE came on to be heard at the January 5, 1970, Session of the Superior Court Division of the General Court of

Justice, before his Honor Hamilton H. Hobgood, Judge Presiding, and a jury; and

Prior to the introduction of evidence certain stipulations were entered into by counsel for the plaintiff and counsel for the defendant; thereafter, opening statements were made by counsel for the plaintiff and counsel for the defendant; whereupon the plaintiff offered evidence and, after the close of the plaintiff's evidence and upon the plaintiff resting her case, the defendant through counsel moved for a directed verdict in favor of the defendant; and

The Court heard the argument of counsel for the defendant in support of said motion and heard the argument of plaintiff's counsel against said motion; and at the conclusion of said arguments and upon consideration of the admissions in the pleadings, the stipulations of counsel and the evidence adduced at the trial, the Court finds the following facts and makes the following conclusions of law:

1. That on October 29, 1966, the defendant was the owner of a certain beach cottage near the Town of Emerald Isle in Carteret County, North Carolina, which said beach cottage was not at said time within the corporate limits of the Town of Emerald Isle, North Carolina, nor within the corporate limits of any other municipality.

2. That on October 29, 1966, the plaintiff rented from the defendant the said beach cottage in its entirety and paid a part of the rental for said cottage for the week-end of October 29, 1966, and went into possession of the same at about three o'clock P.M. on said date with members of her family.

3. That said beach cottage consisted of two stories, the bottom floor being of concrete block construction, and the top floor, wood-framed, redwood exterior, with three bedrooms and an apartment; the floor of the lower floor was concrete, and the cottage had an asphalt shingle roof; that there were two entrances to the cottage, one through the carport and lower floor, from which there was a set of stairs running upstairs to the second floor of the cottage; that the most direct entry from the front of the house, leading from the ground to the front door of the upper floor; that these were the only stairs going up to the second floor of the cottage; that the most direct entry from the carport into the house was through the door that led off the carport into the downstairs portion of said cottage, which at

said time was an unfinished open basement. That this means of ingress and egress was regularly used by persons renting the cottage from the defendant and was used for said purpose by the plaintiff and her family and friends on the date in question.

4. That said stairway leading from the ground floor or basement of the cottage to the upstairs portion or second floor of the cottage was approximately eight to ten feet in height and was constructed of unfinished lumber two inches thick; that the threads (sic) or steps of the stairway were approximately four feet wide and were constructed of 2 x 4s, 2 x 5s or 2 x 6s, pieces of unfinished lumber; that there were no risers at the backs of the steps or threads, and that the height or rise, between the thread was uneven, that the bottom step was about four inches from the floor of the basement and the top step was some ten or twelve inches from the floor of the second story, and the height, or rise, between the threads was not the same between any two treads; that said stairway had no handrails on either side; that the threads or steps on the stairway overlapped each other about an inch or one and a half inches; that the angle or pitch of said stairway was very steep and was approximately 45 degrees; that said stairway and steps were in their first constructed and completed condition and had not required any repairs or maintenances since their original construction; that light fixtures downstairs and upstairs provided illumination of said stairway; that in the downstairs or basement portion of the cottage the fixtures were plain sockets with large, uncovered, bare bulbs approximately one or two hundred watts each.

The cottage of the defendant was built by the defendant and under his personal supervision, using his own labor, and not by any contractor. The steps hereinafter alluded to were in their first constructed and completed condition, and the condition of the steps was well known to the defendant as they were constructed by him.

5. That during the middle of the afternoon of Saturday, October 29, 1966, the plaintiff and her son-in-law and daughter and two granddaughters obtained the key to the cottage from a local rental agency, arrived at the defendant's cottage, entered the cottage through the carport and downstairs door, and went up the steps of the stairway in question to the second floor; that plaintiff carried a few things up said steps with her; that

the plaintiff had difficulty going up the steps, formed the opinion that they were dangerous, and vowed never to use the steps again; that the plaintiff observed that the steps had no risers nor handrails, found that the first two steps and the top step were of uneven height as compared to the risers of the rest of the steps, and formed the opinion at that time that the threads or steps of the stairway were too narrow, that the pitch was similar to a stepladder and too steep; that she further formed the opinion at that time that the steps were dangerous for her use or for use by anyone else because they had no risers, no handrails, the top and bottom steps were uneven in amount of rise, the threads or steps were too narrow and the pitch or angle of incline of the stairway was too steep.

6. That the other members of the plaintiff's family also entered the cottage through the carport-basement entrance.

7. That on October 29, 1966, the plaintiff was 55 years of age, fiive feet six inches tall and weighed 175 pounds.

8. That at approximately five o'clock P.M., another couple, a Mr. and Mrs. Hanshaw, arrived with their five-year-old daughter to spend the night and the next night with the plaintiff and her family.

9. That on said date, at approximately 8:00 P.M., the plaintiff and her son-in-law and daughter and Mr. and Mrs. Hanshaw and the plaintiff's two granddaughters were in the kitchen of said beach cottage, which is located on the second floor near the top of the stairway in question; that the plaintiff and her son-in-law and her daughter and Mr. and Mrs. Hanshaw heard a loud thump and noise in the basement below and heard a child cry out in a loud scream; that all of said persons went down the stairway to the basement or first floor to see what was wrong; that none of said persons called down to the basement prior to going down the stairway.

10. That the first person to go down the stairway was the plaintiff's son-in-law, who 'flew' down the stairs; that the plaintiff's son-in-law was followed down the stairs by the plaintiff, then Mr. Hanshaw, then plaintiff's daughter, and then Mrs. Hanshaw and plaintiff's two granddaughters.

11. That at said time, the lights were on both at the top and at the bottom of the steps and said steps could be seen.

12. That plaintiff's son-in-law, who went down the steps first, could see the steps and did not fall.

13. That Mr. Hanshaw, who came down the steps behind the plaintiff, could see the steps and did not fall going down the steps; that he saw the plaintiff fall forward and to the right, but did not know why she fell; that the other persons thereafter following did not fall.

14. That the plaintiff was barefooted and went down the steps rapidly behind her son-in-law; that the plaintiff did not keep her eyes upon the steps as she went down them; that when plaintiff was approximately half way down the steps, about three to five feet from the bottom, she realized she was losing her balance, and tried to jump, her heel became caught in some manner and she fell forward and to the right onto the floor, sustaining a broken hip.

15. That the stairway was not in a condition of disrepair; and said steps were in their newly constructed condition, and the defendant had not undertaken to alter their construction.

16. That the design and nature of construction of said stairway and the condition thereof was obvious and could readily be determined from a reasonably careful inspection.

17. That the plaintiff had used the steps a few hours prior to her fall and was fully aware of the manner in which said steps were constructed, and the nature and condition thereof, and formed the opinion that said steps were defective in construction and were dangerous for her use.

18. That there was no hidden defect in the design, construction or condition of said steps, and there was no failure on the part of the defendant to disclose any aspect of the design, construction and condition of said steps to the plaintiff.

Upon the foregoing findings of fact the Court makes the following conclusions of law:

1. That on October 29, 1966, at the time the plaintiff sustained the injuries which she complains of, there existed as between the plaintiff and the defendant in regard to her use of the defendant's beach cottage the relationship of landlord and tenant.

2. That the defendant's duty to the plaintiff at said time and place was to disclose to the plaintiff and warn the plaintiff of the existence of any dangerous conditions which were known by him to exist in the premises at the time the premises were rented to the plaintiff and which probably would not be dis-

covered by the plaintiff in the course of a reasonably careful inspection on her part.

3. That the defendant breached no duty which he owed to the plaintiff.

4. That the defendant was not negligent in any manner, and no act by the defendant, nor any failure on his part to act, proximately caused the plaintiff's injury.

5. That the proximate cause of plaintiff's injuries, or at least one of the proximate causes of plaintiff's injuries, was the plaintiff's own negligent failure to exercise due care under the circumstances for her own safety.

IT IS THEREFORE ORDERED that the defendant's motion for a directed verdict in favor of the defendant be, and the same is hereby allowed.

IT IS FURTHER ORDERED, ADJUDGED AND DECREED upon said verdict for the defendant that the plaintiff have and recover nothing of the defendant, that this action be, and the same is hereby dismissed, and that the costs of this action be taxed against the plaintiff.

This 6th day of January, 1970.

HAMILTON H. HOBGOOD
Judge Presiding"

Plaintiff appeals assigning as error the granting of defendant's motion for a directed verdict.

*Nelson W. Taylor for plaintiff appellant.*

*Brock & Gerrans; White, Hooten & White by Thomas J. White, III, for defendant appellee.*

CAMPBELL, J.

[1] When a motion for directed verdict is made under G.S. 1A-1, Rule 50, at the conclusion of the plaintiff's evidence, the trial judge must determine whether the evidence, taken in the light most favorable to the plaintiff and giving to it the benefit of every reasonable inference which can be drawn therefrom was sufficient to withstand defendant's motion for a directed verdict. *Magnolia Apartments v. Hanes,* 8 N.C. App. 394, 174 S.E. 2d 828 (Filed 24 June 1970). The directed verdict, in this sense, is similar to the motion as of nonsuit in the practice of this State before 1 January 1970.

**[2, 3]**   Judge Hobgood ruled here, in effect, that the defendant, as a landlord, was not negligent in that he did not have any duty to warn about patent defects in the beach cottage and that the plaintiff's negligence in hurrying down the allegedly defective steps was a contributing or sole cause of her injury. The latter is predicated in part at least upon the findings that the plaintiff had notice of the condition of the stairs and had vowed not to use them and that she did not keep her eyes on the stairs as she descended them. We hold that these findings of fact are adequately supported by plaintiff's evidence in this case.

A landlord does not normally have a duty to warn his tenant about patent defects in the demised premises. *Harrill v. Refining Co.*, 225 N.C. 421, 35 S.E. 2d 240 (1945); *Phillips v. Stowe Mills, Inc.*, 5 N.C. App. 150, 167 S.E. 2d 817 (1969). The condition of the stairs was patent and obvious. In fact, plaintiff admitted that she observed the condition of the stairs and made a mental note not to use them again. As such, it was proper for Judge Hobgood to conclude, as a matter of law, that the defendant was not liable to the plaintiff here. We hold that the motion for a directed verdict was properly granted.

Affirmed.

PARKER and VAUGHN, JJ., concur.