ROBERT McKINDLEY PERGERSON, SR., ADMINISTRATOR OF THE ESTATE OF ROBERT McKINDLEY PERGERSON, JR. v. JAMES WILLIAMS

No. 7010SC311

(Filed 21 October 1970)

**1. Rules of Civil Procedure §§ 41, 50— judgment of dismissal — trial with jury**

Where judgment of involuntary dismissal in a trial before a jury was improperly entered under Rule 41(b), which is applicable only in a trial by the court without a jury, the Court of Appeals treated the judgment of dismissal as having been entered pursuant to a motion for a directed verdict under Rule 50(a).

**2. Rules of Civil Procedure § 50— motion for directed verdict — absence of specific grounds — review on appeal**

Where the trial court grants a directed verdict upon a motion which failed to state specific grounds therefor, the adverse party who did not object to the failure of the motion to state specific grounds cannot raise such objection on appeal. Rule 50(a).

**3. Rules of Civil Procedure § 50— motion for directed verdict — former procedure**

In determining the sufficiency of plaintiff's evidence to withstand defendant's motion for a directed verdict in a jury case, the trial court and the Court of Appeals are guided by the same principles that prevailed under the former procedure with respect to the sufficiency of evidence to withstand a motion for nonsuit.

**4. Rules of Civil Procedure § 50— motion for directed verdict — consideration of evidence**

On motion for a directed verdict, all evidence which supports plaintiff's claim must be taken as true and considered in the light most favorable to plaintiff, giving to plaintiff the benefit of every reasonable inference which may legitimately be drawn therefrom, and with contradictions, conflicts and inconsistencies being resolved in plaintiff's favor.

**5. Automobiles § 63— negligence in striking three-year-old child — sufficiency of evidence**

In an action to recover for the wrongful death of a three-year-old child who was struck by the defendant's automobile on a street, the

Pergerson v. Williams

trial court properly granted the defendant's motion for a directed verdict where (1) there was no evidence of excessive speed or that defendant failed to keep his car under reasonable control, (2) defendant did not see the child until immediately prior to the impact, (3) and it was a matter of conjecture whether the child had been visible in or near the street for a sufficient length of time to put a reasonably careful driver on notice of the child's presence.

Judge VAUGHN dissents.

APPEAL by plaintiff from *Bailey, J.*, 7 January 1970 Civil Session of WAKE Superior Court.

Civil action to recover damages for the wrongful death of a three-year-old child.

At the trial before judge and jury the parties stipulated: The child died as a result of injuries received when he was struck about 5:30 p.m. on 5 October 1967 by an automobile being driven by defendant in a northerly direction on South Main Street just inside the southern limits of the Town of Wake Forest, N. C. South Main Street runs generally north and south, and the official speed limit at the time and place was 35 miles per hour. The width of the traveled portion of the street was about 32 feet. Parallel parking was permitted on the west side of the street, outside of the main traveled portion. At the time of the accident it was daylight, the weather was clear, and the road was dry.

Plaintiff's evidence tended to show: South Main Street where the accident occurred was level, straight, and paved, and had curbs and gutters. Along the east side of the street there was a concrete sidewalk, approximately five-feet wide, which was separated from the east curb of the street by a grassed area, which was also approximately five-feet wide. The child lived with his parents in a basement apartment in a house on the east side of the street. The entrance to the apartment was in the back yard. There was a front yard, which extended from the front of the house for a distance of about 35 feet to the east edge of the sidewalk. There were no trees or bushes in the front yard. Out near the street and in the grassed area between the sidewalk and the curb there was one tree about eight inches in diameter and a telephone pole right by the tree. There was a covered guy wire coming down from the pole, with a metal guard around it about four-inches wide. On the south side of the front yard there was a driveway leading to the back yard. On the north side of the driveway there was a City Limits sign, which was on a four-by-four post and was five or six feet up in the air.

On the City Limits sign there was also a sign saying "Bird Sanctuary." The City Limits sign was in line with the pole and the tree. Other than the City Limits sign, the telephone pole and guy wire, and the tree, there were no obstructions either in the grassed area, the sidewalk, or front yard. The sidewalk and the grassed area ended at the driveway, and south of the driveway there was an Army Surplus Store. Across the street was a service station and a dentist's office. There was a painted line on South Main Street approximately ten feet from the east side.

On the afternoon of the accident the child and his father had been playing in the back yard while the mother was at work. The father went into the house to the bathroom, leaving his son playing in the back yard and telling the child to wait on the patio for him and that he would be back in a minute. The father heard tires "squalling," ran to the back yard, then to the front yard, and saw his son lying in the street. The child died in the hospital on the next day.

Defendant, called as a witness for plaintiff, testified in substance, except where quoted, as follows: About 5:30 in the afternoon on 5 October 1967 he was driving a 1960 Chevrolet automobile in a northerly direction in the Town of Wake Forest. He was coming from work and was going into Wake Forest to pick up a newspaper. He had driven on this street before and knew what type of businesses were on that street. He knew there was an Army Surplus Store and Dr. Underwood's office and homes on the street. He knew there was a school on South Main Street just north of this area and that there was a fenced-in playground in the area of the school. He did not see any cars parked on the east side of South Main Street and didn't remember seeing any cars in front of the Army salvage store. He didn't remember seeing any cars parked in the drive next to the house and didn't know if there were any cars parked on the left side of the street. There was no traffic in his lane in front of him nor any oncoming traffic. He did strike the little boy with his car. When he saw him for the first time, "[a]ll at once he just appeared up in front of my automobile, just about the length of my car, just about that distance from him. Looked like to me he was right on top of my hood I was so close. I was probably about a car length." He didn't have any idea how wide the northbound lane was and didn't know how wide his car was. He was in the center of the lane. Other than the little boy, there was no person or anything else in the street. The windshield of his car was clear, it was not raining, and the windshield was not

cracked and did not have any paper or obstruction of any kind on it. "When the boy appeared up on the hood of my automobile he was right in the middle of the street." When he saw him for the first time the boy's head was down under the hood and defendant couldn't tell where the boy was running, but his head was bouncing up and down. He did not know why he didn't see the boy between the curb and the time he was to the middle of his car. He did not know if the boy was on the left or the right side of the street. The only time he saw him was when he was in the middle of the street. He knew of no reason that would have kept him from seeing the boy "unless it would have been those trees and things, telephone post, could have been around behind those trees; phone posts or something of that sort. There is some bushes or something along there too. I could see probably three or four hundred yards, maybe five, six, almost straight-away, no curves."

The investigating police officer testified in substance as follows: He found defendant's car sitting next to the curb on the east side of the street. Defendant told him the car had not been moved from the time it stopped after the collision until the officer arrived. There were marks on the street leading up to the automobile. One black mark, about two or two and a half feet long, led up under the right rear wheel. Other broken skid marks went back for a total of twenty-three feet to where the officer's investigation showed the child was hit. There were other skid marks in line with the one behind the car. He measured sixty-seven feet of skid marks with broken places, but, except for the two feet which led right under the wheel of defendant's car, he did not know whether they came from defendant's car. Defendant told him that the first time he saw the child was when he was on the front of his hood and radiator of his car. He inspected the car for damage and found a small place about the middle where the hood comes down on the radiator.

On cross-examination the officer testified he did not find any evidence of excessive speed, that the car was stopped just about where the child was struck, and that was right at the point of a tree and a telegraph pole.

At the close of plaintiff's evidence the court entered judgment that the case "be dismissed under Rule 41(b), that a judgment of involuntary dismissal be entered herein."

Plaintiff appealed, assigning as error "the ruling of the Court in granting the defendant's motions for judgment as of

nonsuit," and "the signing and entry of the judgment dismissing the plaintiff's action."

Hubert H. Senter and Boyce, Mitchell, Burns & Smith, by Eugene Boyce for plaintiff appellant.

Maupin, Taylor & Ellis, by Armistead J. Maupin for defendant appellee.

PARKER, Judge.

[1] The judgment appealed from recites it was entered under Rule 41(b). Except for dismissal for failure of plaintiff to prosecute or to comply with the rules of civil procedure or an order of court, which are clearly inapplicable here, Rule 41(b) deals with motions for a dismissal on the ground that upon the facts and the law the plaintiff has shown no right to relief *in an action tried by the court without a jury.* G.S. 1A-1, Rule 41(b). The present case was tried before judge and jury. Therefore, the reference in the judgment to Rule 41(b) was not appropriate. Federal courts, applying cognate Federal Rules of Civil Procedure, have held that "[w]here a motion for dismissal is made pursuant to Rule 41(b) in a jury case, it may properly be treated as a motion for a directed verdict under Rule 50(a)." *Wolf v. Reynolds Electrical & Engineering Co.,* 304 F. 2d 646 (9th Cir. 1962); accord, *Sano v. Pennsylvania Railroad Company,* 282 F. 2d 936 (3rd Cir. 1960); *Carroll v. Seaboard Air Line Railroad Company,* 371 F. 2d 903 (4th Cir. 1967); *Cranston Print Works Co. v. Public Service Co. of N. C.,* 291 F. 2d 638 (4th Cir. 1961); see, 2B Barron and Holtzoff, Federal Practice and Procedure, § 1074, p. 371. We shall also treat the judgment of dismissal in the present case as having been entered pursuant to a motion for a directed verdict under Rule 50(a) of the Rules of Civil Procedure.

[2] Rule 50(a) expressly requires that a motion for a directed verdict "shall state the specific grounds therefor." The record before us does not affirmatively disclose that specific grounds were stated for defendant's motion. However, plaintiff did not object at the trial to the failure of defendant to state specific grounds for his motion. "If the court denies a motion for a directed verdict which fails to state the specific grounds for the motion, the moving party may not complain of the denial on appeal. Conversely, if such a motion is granted, the adverse party who did not object to failure of the motion to state specific

grounds therefor cannot raise such objection in the appellate court." 2B Barron and Holtzoff, Federal Practice and Procedure, § 1073, p. 370; accord, *Cox v. City of Freeman, Missouri*, 321 F. 2d 887 (8th Cir. 1963). Since the defendant's motion was granted in the present case and plaintiff raised no objection at the trial that specific grounds were not stated for the motion, such an objection will not be considered on this appeal.

[3, 4] In determining the sufficiency of a plaintiff's evidence to withstand a defendant's motion for a directed verdict in a jury case, the trial court and this Court on appeal are guided by the same principles that prevailed under our former procedure with respect to the sufficiency of evidence to withstand a motion for nonsuit under G.S. 1-183. *Sawyer v. Shackleford*, 8 N.C. App. 631, 175 S.E. 2d 305; *Musgrave v. Savings & Loan Assoc.*, 8 N.C. App. 385, 174 S.E. 2d 820. All evidence which supports plaintiff's claim must be taken as true and considered in the light most favorable to plaintiff, giving to plaintiff the benefit of every reasonable inference which may legitimately be drawn therefrom, and with contradictions, conflicts and inconsistencies being resolved in plaintiff's favor. *Bowen v. Gardner*, 275 N.C. 363, 168 S.E. 2d 47. The question presented by this appeal, therefore, is whether plaintiff's evidence in this case, when so considered, was sufficient to support a jury finding of actionable negligence on the part of defendant. We agree with the trial court's conclusion that it was not.

[5] There was no evidence of excessive speed, or that defendant failed to keep his car under reasonable control, or that he failed to exercise care to avoid hitting the child as soon as he saw him. Defendant did not see the child until immediately prior to the impact. At that instant the child was already directly in front of defendant's car and in defendant's lane of travel. "The boy's head was down under the hood and defendant couldn't tell where the boy was running, but his head was bouncing up and down." It is, of course, possible to conjecture that the child had been visible in or on the side of the street for a sufficient length of time to put a reasonably careful driver on notice of his presence. It is, however, just as reasonable to conjecture that the child had suddenly darted into the street from behind the tree and telephone pole directly into the path of defendant's car. Had that been the case, then even the most careful and attentive driver could not have avoided striking him. On the evidence presented, these matters must forever remain in the realm of conjecture.

The facts here are strikingly similar to the facts in *Badger v. Medley*, 262 N.C. 742, 138 S.E. 2d 401. In that case the Supreme Court, affirming a judgment of nonsuit, said: "Assuming that defendant failed to keep a reasonable lookout, there is not sufficient evidence from which it may be inferred that his inattention was a proximate cause of the accident and that in the exercise of reasonable care he might have avoided the accident."

What was said by Campbell, Judge, in *Edens v. Adams*, 3 N.C. App. 431, 165 S.E. 2d 68, is appropriate here: "A cause of action must be something more than a guess. A resort to a choice of possibilities is guesswork, not decision. To carry the case to the jury, the plaintiffs must offer evidence sufficient to take the case out of the realm of conjecture and into the field of legitimate inference from established facts."

The judgment appealed from is

Affirmed.

Judge CAMPBELL concurs.

Judge VAUGHN dissents.