THE AETNA CASUALTY AND SURETY COMPANY v. LUMBER-MEN'S MUTUAL CASUALTY COMPANY, ESTEL OREN DOBY, GERALDINE DOBY BYARS TROUTMAN, DON M. EARNHARDT, PENNY KAY EARNHARDT FARABEE, AND MARIE O. CONRAD, ADMINISTRATRIX OF THE ESTATE OF LINDA JO CONRAD

No. 7122SC95

(Filed 23 June 1971)

1. Insurance § 87— automobile insurance — driving without permission of insured — peremptory instruction

Evidence warranted a peremptory instruction that the automobile insured by an automobile liability insurer was being driven without the actual permission of the insured at the time of the accident.

2. Automobiles § 105— statutory presumption of agency — action between automobile insurers

The statute relating to proof of agency in automobile accidents does not apply in an action brought by one insurer against another insurer for a declaratory judgment of their rights and obligations under their respective policies of insurance. G.S. 20-71.1(a).

3. Rules of Civil Procedure § 50; Declaratory Judgment Act § 2— directed verdict

A directed verdict may not be entered in a declaratory judgment action. G.S. 1A-1, Rule 50.

APPEAL by defendant Marie O. Conrad, Administratrix of the Estate of Linda Jo Conrad, from *McLean, Judge,* July 1970 Session of Superior Court of DAVIDSON County.

The Aetna Casualty and Surety Company (Aetna) brought this declaratory judgment action asking that judgment be entered adjudicating that its policy of insurance afforded no coverage and that it had no duty to defend Penny Kay Earnhardt Farabee in an action in which Marie O. Conrad, administratrix of the estate of Linda Jo Conrad (Linda), is plaintiff and Penny Kay Earnhardt Farabee (Penny) is defendant. Aetna alleged that on 19 December 1967 (the date on which the collision occurred from which the lawsuit resulted) it had issued to defendant Don M. Earnhardt, father of Penny, a family automobile liability policy, and that Penny was then 16 years of age and a member of his household. At that time, Lumbermen's Mutual Casualty Company (Lumbermen's) had in effect a liability insurance policy issued to defendant Estel Oren Doby, who was then the owner of a 1955 Ford. Defendant Geraldine Doby Byars Troutman was the daughter of Estel Oren Doby and had express permission to use the 1955 Ford and did use it regularly to go to and from her job at Central School in Davidson County. On 19 December 1967, Linda and Penny approached Geraldine Troutman on several occasions to obtain permission to use the 1955 Ford to go into Lexington from school. Permission was refused. They, nevertheless, took the car, and, while Penny was driving, the car left the highway and overturned and Linda was killed. The 1955 Ford was being operated without the knowledge or permission of the owner and Geraldine Troutman had no authority, express or implied, to permit anyone else to drive the car and did not give permission to Penny to drive the car. At the time of the accident, Penny was driving the car with the knowledge that she had no permission either from the owner or the person in possession, and she, therefore, could not qualify as a "person insured" under Aetna's policy.

The administratrix answered, demanding a jury trial, admitting the existence of the two insurance policies, that the car was owned by Doby and that Geraldine Troutman had express permission to use it, that Penny was driving the car, and that Linda was killed instantly. All other allegations were denied. For further defense, she alleged that Penny was driving the car with permission and both Aetna and Lumbermen's are obli-

gated to pay any judgment obtained by the administratrix against any of the defendants.

Penny and Don Earnhardt filed a joint answer admitting the existence of the policies, that Doby owned the car and Geraldine Troutman had permission to use it, that Penny was driving, and that Linda was killed. They specifically denied it was being driven without permission. By further answer they alleged that Penny and Linda were given specific permission to use the car and that at the time of the accident it was being used with the permission of both Doby and Geraldine Troutman.

Lumbermen's answered admitting the two policies, that Doby owned the Ford but that coverage for it was limited to the terms, provisions and conditions contained in the policy; that Geraldine Troutman had permission to use it; that Penny and Linda had no permission; that it was being operated by Penny without the knowledge of the owner or the person in possession; that Penny was operating the car with knowledge that she had no permission; that she had no reason to believe she had permission and, therefore, no liability coverage was afforded under either Aetna's policy or Lumbermen's policy. For a further defense, Lumbermen's alleged that the policy issued to Doby extended coverage to any person while using the insured automobile "provided the actual use of the automobile is by the named insured or such spouse or with the permission of either"; that no coverage is afforded unless the user of the car has permission of insured or the spouse of insured; that Penny did not have permission of Doby or any other person authorized to grant permission. Lumbermen's asked for a declaratory judgment adjudicating that its policy does not afford coverage to Penny and that it be adjudicated not to be obligated or liable with respect to the defense of Penny and the payment of any judgment which might be rendered against her arising out of the facts alleged in her complaint.

The Earnhardts replied to the further defense denying no permission and alleging further that Geraldine Troutman regularly used the Ford as a member of Doby's household, had control of it, expressly permitted Penny and Linda to use it on this occasion as she had on previous occasions, and that both Aetna and Lumbermen's are obligated to pay any judgment obtained against the Earnhardts or either of them, to the extent of their policy limits.

Upon trial, at the close of all the evidence, Lumbermen's moved for a directed verdict under Rule 50 on the ground that the evidence was insufficient to support an answer to the issue which would establish coverage under the liability insurance policy issued by it, the only issue relating to Lumbermen's being "Did the the defendant, Penny Kaye Earnhardt Farabee, operate the 1955 Ford automobile without the permission of Geraldine Troutman on December 19, 1967, as alleged in the complaint?" The court allowed the motion and defendant Conrad objected, excepted and assigns the allowance of the motion as error on appeal. Aetna's motion for directed verdict was denied.

Issues as to Aetna were submitted to the jury and answered against Aetna. The court entered judgment that Aetna be declared to be directed to furnish liability coverage to Penny under its liability policy issued to Don Earnhardt. Aetna moved for judgment notwithstanding the verdict and for a new trial, moved to amend the judgment granting directed verdict in favor of Lumbermen's to state specifically that it is without prejudice to Aetna and the other defendants to proceed against Lumbermen's on its policy of insurance, and filed a "request for and proposed findings of fact and conclusions of law" with respect to Lumbermen's motion for directed verdict. All of these appear in the record. All were denied by the court. Aetna did not except and does not appeal. Defendant administratrix of the estate of Linda Jo Conrad did appeal.

*White, Crumpler and Pfefferkorn, by Joe P. McCollum, Jr., for defendant Marie O. Conrad, Administratrix of the Estate of Linda Jo Conrad, appellant.*

*Walser, Brinkley, Walser and McGirt, by Walter F. Brinkley, for defendant Lumbermen's Mutual Casualty Company, appellee.*

MORRIS, Judge.

[1] Although the policies involved in this litigation were attached to the pleadings and introduced into evidence as exhibits, neither was sent up with the record nor does the record contain any stipulation giving a verbatim quote of the pertinent portions of either policy. Lumbermen's, in its further defense, alleges that its policy "included a provision enumerated as III(a)

which extended coverage to any person while using the insured automobile 'provided the actual use of the automobile is by the named insured or such spouse or with the permission of either.' " The Earnhardts admitted the policy included this phraseology but alleged the policy had other provisions. The issues submitted to the jury as to Aetna were: "Did the defendant Penny Kay Earnhardt Farabee operate the 1955 Ford automobile without the permission of Geraldine Troutman on Dec. 19, 1967, as alleged in the complaint?" and "If not, *(sic)* did the defendant Penny Kay Earnhardt Farabee operate the 1955 Ford automobile without reasonable ground to believe that she had the permission of Geraldine Troutman to so operate the Ford automobile as alleged in the complaint?" There appears to be no conflict as to the terms of the two policies: Lumbermen's required actual permission, and Aetna's required actual permission or reasonable grounds to believe that permission had been granted.

Aetna's evidence came from Geraldine Troutman, Mrs. Carlie Styers, and Cathy Bentley James.

Mrs. Troutman testified that she worked as a maid at the school attended by Penny and Linda; that she used her father's car to drive to and from her work; that she had, on one occasion, allowed Penny Earnhardt to use the car, but had been told she should not do so; that on 19 December 1967, these girls came to her several times requesting permission to use the car but on each occasion she refused and never did give either girl permission to use the car.

Mrs. Styers testified that she was Mrs. Troutman's supervisor; was with Mrs. Troutman all morning and heard the girls on several occasions ask Mrs. Troutman for permission to use the car. She further testified that each time they asked they were refused and that she heard Mrs. Troutman tell them that one reason was that her father might want the car.

Cathy James, a student at the school, testified that she talked to Penny and Linda in the school clinic. "They just told me they was going to leave school and asked me if I wanted to go along. They said how they were going. Said they was getting Mrs. Geraldine's car. Mrs. Troutman's car. The 1955 Ford. The girls went out and asked for permission to use the car. I did not learn whether they got permission there in the clinic. Linda

left for a while and came back to the clinic. Penny was there in the clinic when Linda came back. Linda said Mrs. Troutman told her she could not have the car. Penny told her to go back and ask again. Linda came back into the clinic. Penny was there. I was there. Linda said at the time she said they couldn't have the car. Still couldn't have the car. Penny said go back and ask again; she kept sending her out. The last time I saw them in the clinic—the last time Linda told Penny they didn't have permission to use the car, that's when they started to leave."

Estel Doby testified for Lumbermen's that he owned the car and had told his daughter on that day that if he needed it he would come and swap cars with her. On cross-examination, he testified that his daughter used the car with his permission; that she had no reason to let anybody have it; that he didn't know anybody had ever driven it; and that he had told her not to let anybody drive it.

Penny Earnhardt Farabee testified for defendants that she had driven the 1955 Ford on another occasion; that she hadn't asked to use it but "I knew it was all right to drive the automobile because she told Kathy it was"; that on this particular day, the day of the accident, when she went with Linda to ask Mrs. Troutman for the use of the car, "she said it was hard to start that morning and she was afraid if we took the car we might not get back; she didn't say yes; she didn't say no." She testified that she saw Linda talking with Mrs. Troutman later but did not know what they said because they were far up the hall; that a second time Linda went to ask her. Over objection by Lumbermen's and Aetna, Penny was allowed to testify that when Linda came back, Linda said "she said we could," that Joyce Keller was present at the time and the witness asked Linda " 'Are you sure?' and she said yes."

Judy Keller Hedrick testified over objection that Penny told her they had permission to use it and asked if she wanted to go along.

[2] Appellant assigns as error the court's allowing a directed verdict in favor of defendant Lumbermen's upon the grounds that the evidence was insufficient to take the question of Lumbermen's coverage of the automobile involved to the jury. Appellant contends that proof of ownership of the vehicle is also

prima facie proof of agency, under G.S. 20-71.1(a) which provides: *"In all actions to recover damages for injury to the person or to property or for the death of a person,* arising out of an accident or collision involving a motor vehicle, proof of ownership of such motor vehicle at the time of such accident or collision shall be prima facie evidence that said motor vehicle was being operated and used with the authority, consent and knowledge of the owner in the very transaction out of which said injury or cause of action arose." (Emphasis ours.) This action is not an action to recover damages for injury to the person or to the property or for the death of a person arising out of an accident or collision involving a motor vehicle. This is an action brought by an *insurer* against another *insurer* to have the Court declare the rights and obligations of the *insurers* under their policies of insurance. What we said in *Phillips v. Insurance Co.,* 4 N.C. App. 655, 167 S.E. 2d 542 (1969), is applicable here. This is not the type of case to which the statute was intended to apply.

[1, 3] The only evidence as to permission competent as to Lumbermen's was all to the effect that no permission was given. Whether incompetent evidence is to be considered on a motion for directed verdict is not presently before us. We have previously said that a motion for directed verdict under the new rules produces virtually the same effect and ordinarily will be treated the same as a motion for nonsuit under the old rules in determining whether the evidence should be submitted to the jury. *Pergerson v. Williams,* 9 N.C. App. 512, 176 S.E. 2d 885 (1970); *Sawyer v. Shackleford,* 8 N.C. App. 631, 175 S.E. 2d 305 (1970); *Anderson v. Mann,* 9 N.C. App. 397, 176 S.E. 2d 365 (1970). It follows, we think, that those classes of cases not subject to nonsuit under the old rules would not be ordinarily subject to directed verdict under the new rules. A nonsuit was prohibited in caveat proceedings. *In re Will of Redding,* 216 N.C. 497, 5 S.E. 2d 544 (1939). The Supreme Court adopted the rule that a judgment of nonsuit may not be entered in a declaratory judgment action. *Hubbard v. Josey,* 267 N.C. 651, 148 S.E. 2d 638 (1966); *Insurance Co. v. Roberts,* 261 N.C. 285, 134 S.E. 2d 654 (1964); *Board of Managers v. Wilmington,* 237 N.C. 179, 74 S.E. 2d 749 (1953). See also *Chatfield v. Farm Bureau Mutual Automobile Ins. Co.,* 208 F. 2d 250 (C.A. 4th Cir.) (1953). Since the nonsuit and directed verdict are so analogous, we are of the opinion that directed verdict here was

not appropriate. Upon the evidence in this case, a peremptory instruction in favor of Lumbermen's would have been appropriate.

New trial.

Judges BROCK and VAUGHN concur.